## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |
|---|---|
| ADAM BROWN, on Behalf of Himself and All Others Similarly Situated,<br><br>      Plaintiff,<br><br>v.<br><br>LEARFIELD COMMUNICATIONS, LLC, SIDEARM SPORTS, LLC, UNIVERSITY OF TEXAS AT AUSTIN, and THE UNIVERSITY OF TEXAS AT AUSTIN ATHLETICS,<br><br>      Defendants. | **Case No.: 1:23-cv-00374-DAE**<br><br><br><br>**Hon. David A. Ezra** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT LEARFIELD COMMUNICATIONS, LLC AND SIDEARM SPORTS, LLC'S 12(b)(1), 12(b)(6), and <u>12(b)(7) MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS......................................................................................................1

ARGUMENT..........................................................................................................................3

   I.    The Operator Defendants are not an arm of the state and are not immune from suit. .........3

   II.   The Complaint should not be dismissed for failure to join an indispensable party. ...........4

   III.    Plaintiff has stated a claim under the VPPA.....................................................................6

     A.   Plaintiff is a consumer under the VPPA. ......................................................................6

     B.   Operator Defendants are VTSPs under the VPPA. ........................................................8

     C.   Operator Defendants knowingly disclosed Plaintiff's PII..............................................9

   IV.  The VPPA does not facially violate the first amendment. ..................................................14

     A.   The VPPA regulates commercial speech and satisfies intermediate scrutiny.................14

     B.   The VPPA is not vague or overbroad. ..........................................................................18

   V.   The VPPA is not unconstitutional as applied to Operator Defendants. .............................20

CONCLUSION.......................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Am.'s Test Kitchen, LP*,
  2023 U.S. Dist. LEXIS 113127 (D. Mass. June 30, 2023) ....................................................9

*Adelman v. Peter*,
  2011 U.S. Dist. LEXIS 171704 (S.D. Tex. Sep. 29, 2011) ........................................................5

*Ambrose v. Bos. Globe Media Partners LLC*,
  2022 U.S. Dist. LEXIS 168403 (D. Mass. Sept. 19, 2022) ................................................ 11, 13

*Barr v. Am. Ass'n of Pol. Consultants*,
  140 S. Ct. 2335 (2020)................................................................................................................16

*Bd. of Trustees of State Univ. of N.Y. v. Fox* ("*SUNY*"),
  492 U.S. 469, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989)........................................................18

*Belozerov v. Gannett Co.*,
  2022 U.S. Dist. LEXIS 229436 (D. Ma. Dec. 20, 2022)........................................ 7, 11, 13, 20

*Board of Trustees of State Univ. of N.Y. v. Fox*,
  492 U.S. 469 (1989) ...................................................................................................................15

*Boelter v. Advance Magazine Publrs. Inc.*,
  210 F. Supp. 3d 579 (S.D.N.Y. 2016) ...............................................................................passim

*Boelter v. Hearst Communs., Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016) ...................................................................... 17, 18, 20

*Bolger v. Youngs Drug Prods. Corp.*,
  463 U.S. 60 (1983) .....................................................................................................................15

*Broad. Music, Inc. v. Armstrong*,
  2013 U.S. LEXIS 103938 (W.D. Tex. Jul. 24, 2013) .................................................................5

*Brown v. Entm't Merchs. Ass'n*,
  564 U.S. 786 (2011).....................................................................................................................16

*Cal. Teachers Ass'n v. State Bd. of Educ.*,
  271 F.3d 1141 (9th Cir. 2001) ...................................................................................................19

*Cappello v. Walmart Inc.*,
  2019 U.S. Dist. LEXIS 237326 (N.D. Cal. Apr. 5, 2019) ........................................................13

*Carter v. Scripps Networks, LLC,*
 2023 U.S. Dist. LEXIS 71150 (S.D.N.Y. Apr. 24, 2023).........................................................8

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n. of N.Y.,*
 447 U.S. 557 (1980) ...............................................................................................................15

*City of Cincinnati v. Discovery Network, Inc.,*
 507 U.S. 410 (1993) ...............................................................................................................15

*Contest Promotions, LLC v. City & Cnty. of San Francisco,*
 874 F.3d 597 (9th Cir. 2017)...................................................................................................15

*Czarnionka v. Epoch Times Ass'n Inc.,*
 2022 U.S. Dist. LEXIS 226328 (S.D.N.Y. Dec. 15, 2022).....................................................11

*Czarnionka v. Epoch Times Ass'n,*
 2022 U.S. Dist. LEXIS 209067 (S.D.N.Y. Nov. 17, 2022)................................................11, 13

*Dahlstrom v. Sun-Times Media, LLC,*
 777 F.3d 937 (7th Cir. 2015)...................................................................................................14

*Eichenberger v. ESPN, Inc.,*
 876 F.3d 979 (9th Cir. 2017)...................................................................................................10

*Ellis v. Cartoon Network, Inc.,*
 803 F.3d 1251 (11th Cir. 2015)...............................................................................................17

*Enslin v. Coca-Cola Co.,*
 136 F. Supp. 3d 654 (E.D. Pa. 2015) ......................................................................................12

*Feldman v. Star Trib. Media Co. LLC,*
 2023 U.S. Dist. LEXIS 37416 (D. Minn. Mar. 7, 2023)......................................... 9, 11, 12, 13

*First Resort, Inc. v. Herrera,*
 80 F. Supp. 3d 1043 (N.D. Cal. 2015), *aff'd,* 860 F.3d 1263 (9th Cir. 2017)..........................15

*Fla. Bar v. Went For It,*
 515 U.S. 618 (1995) ...............................................................................................................17

*Gensetix, Inc. v. Bd. Of Regents,*
 966 F.3d 1316 (Fed. Cir. 2020) ................................................................................................5

*Goldstein v. Fandango Media, LLC,*
 2023 U.S. LEXIS 71415 (S.D. Fla. Mar. 7, 2023) ..............................................................9, 20

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ....................................................................................................19

*Harris v. Pub. Broad. Serv.,*
    2023 U.S. Dist. LEXIS 45888 (N.D. Ga. Mar. 20, 2023)................................... 7, 9, 13

*Hersh v. United* States,
    553 F.3d 743 (5th Cir. 2008) ..................................................................................14, 20

*Hoffman Ests. v. Flipside, Hoffman Estates,*
    455 U.S. 489 (1982) ................................................................................................18, 20

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) ........................................................................................................20

*In re Hulu Priv. Litig.,*
    2014 U.S. Dist. LEXIS 59479 (N.D. Cal. Apr. 28, 2014) ......................................11

*In re Hulu Priv. Litig.,*
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) ....................................................................12

*In re Nickelodeon Consumer Priv. Litig.,*
    827 F.3d 262 (3d Cir. 2016) ....................................................................................10

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit,*
    507 U.S. 163 (1993) ..................................................................................................6

*Lebakken v. WEBMD, LLC,*
    2022 U.S. Dist. LEXIS 201010 (N.D. Ga. Nov. 4, 2022)........................... 7, 8, 11, 13

*Lee v. Anthony Lawrence Collection, L.L.C.,*
    47 F.4th 262 (5th Cir. 2022) ....................................................................................6

*Munn v. Illinois,*
    94 U.S. 113 (1876) ....................................................................................................14

*Nat'l Endowment for the Arts v. Finley,*
    524 U.S. 569 (1998) ..................................................................................................14

*Rajet Aeroservicios S.A. de C.V. v. Castillo Cervantes,*
    801 F.App'x 239 (5th Cir. 2020) ..............................................................................5

*Retail Digital Network, LLC v. Prieto,*
    861 F.3d 839 (9th Cir. 2017) ....................................................................................15

*Robinson v. Disney Online,*
    152 F. Supp. 3d 176 (S.D.N.Y. 2015) .................................................................10

*Senne v. Vill. of Palatine,*
    695 F.3d 597 (7th Cir. 2012) .............................................................................12

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011)............................................................................................15

*Stark v. Patreon, Inc.,*
    2022 U.S. Dist. LEXIS 187602 (N.D. Cal. Oct. 13, 2022)..............................11, 13

*Stark v. Patreon, Inc.,*
    2023 U.S. Dist. LEXIS 27481 (N.D. Cal. Feb. 17, 2023) ..........................13, 18, 19

*Stark v. Patreon, Inc.,*
    No. 3:22-cv-03131-JCS (N.D. Cal. Dec. 5, 2021) ................................................16

*State Farm Lloyds v. Four Wives,*
    2023 U.S. Dist. LEXIS 51571 (S.D. Tex. Feb. 24, 2023)....................................5

*Sterk v. Redbox, LLC,*
    770 F.3d 618 (7th Cir. 2014) .............................................................................8

*Texas v. Ysleta Del Sur Pueblo,*
    2016 U.S. Dist. LEXIS 70159 (W.D. Tex. May 27, 2016) ...................................5

*Trans Union Corp. v. F.T.C.,*
    245 F.3d 809 (D.C. Cir. 2001) ..........................................................................14

*Trans Union Corp. v. F.T.C.,*
    267 F.3d 1138 (D.C. Cir. 2001) ...................................................................14, 17

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.,*
    603 F. Supp. 3d 1334 (S.D. Fla. 2022) .............................................................16

*U.S. v. Rutherford Oil Corp.,*
    2009 U.S. Dist. LEXIS 40233 (S.D. Tex. May 13, 2009) ................................4, 5

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ..........................................................................................19

*Whalen v. Roe,*
    429 U.S. 589 (1977) ..........................................................................................16

*Yershov v. Gannett Satellite Info. Network, Inc.*,
   820 F.3d 482 (1st Cir. 2016) ...................................................................................7

*Zapata v. Hays Cty. Junvenile Det. Ctr. & Brett Littlejohn*,
   2022 U.S. Dist. LEXIS 89178 (W.D. Tex. May 18, 2022) ........................................5

**Statutes**

18 U.S.C. § 2710(a)(1) ...................................................................................................6
18 U.S.C. § 2710(a)(3) ..............................................................................................8, 10

**Other Authorities**

S. Rep. No. 100-599 .............................................................................................1, 8, 17

## INTRODUCTION[1]

The Operator Defendants are responsible for the VPPA violations associated with the Longhorns website and will be obligated to pay any judgement against them directly as the owner-operators or against the UT Defendants as their indemnitors. The State of Texas has no financial exposure. The Operator Defendants are neither an arm of State, nor are they entitled to an extension of sovereign immunity. Accordingly, they must be held accountable for violating the VPPA by writing and installing "Pixel" code into the websites, which they fully control, to surveil their users' protected video watching data and share that data with third parties in a form that any ordinary person can use to garner a subscribers PII and web watching history.

The VPPA itself is not vague or unconstitutionally restrictive of commercial speech. The Operator Defendants' Motion to Dismiss should be denied.

## STATEMENT OF FACTS

Congress passed the VPPA to prohibit video providers from engaging in the knowing disclosure of PII concerning consumers of those providers. ¶ 24.[2]  Congress believed that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems [was] a new, more subtle and pervasive form of surveillance." ¶ 25 (quoting S. Rep. No. 100-599 at 7-8 (1988)); *see* Exhibit 1 to Yarborough Declaration ("Decl.").

The Operator Defendants host and manage the operation of collegiate and high school athletic websites and mobile platforms (¶ 32), including 300 Division 1 Sports teams.  ¶ 34.  The Operator Defendants host and deliver video content to subscribers, including "pre-recorded content," which was facilitated through partnerships with content providers, such as CBS.  ¶ 38.

---

[1] Unless otherwise defined, capitalized terms are defined in Plaintiff's Complaint.
[2] Reference to Defendants' Motion to Dismiss (ECF 22) (hereafter, "¶")

The Operator Defendants provide support to end users, retain the data and video used to provide content to the websites, and own the "website's traffic" from the team websites. *See* ¶¶ 43-51. They control teams' access to their own athletic websites, ownership of the IP used in creating the team websites, and advertising rights and control on the team websites. ¶ 52.

The Complaint alleges the overt steps that the Operator Defendants needed to take to put the Facebook Pixel (the "Pixel") on the team websites, including signing up for a "business manager" account (¶ 69); creating the "Pixels" (¶ 70); naming them (¶ 70); specifying which user data to collect (¶ 73); and placing the Pixels' code on each webpage they intended to track. ¶¶ 72-76, 92. The Operator Defendants' tracking efforts did not end with the Pixel placement. They used webpage naming practices,[3] including naming webpages to use video titles or descriptions (collectively, the "Video Watching Data") embedded within the webpages. *See* ¶ 84. This is different from the Operator Defendants' previously used webpage naming schemes, which anonymized video data. The multi-step process for gaining access to and placing the Pixel – as well as the decision to use video titles in webpage names – did not occur on its own and was purposefully by someone with control of the website. The Operator Defendants took those knowing steps here. The Pixel employed on the Longhorns Website disclosed subscribers' unique and unencrypted Facebook ID Number (FID or UID) to Facebook – in the same transmission as the Video Watching Data. Because the Operator Defendants failed to censor their Pixels'[4] HTTP

---

[3] *The Playbook: New URL Structure*, SIDEARM SPORTS
https://playbook.sidearmsports.com/features/new-url-structure/ (last visited July 7, 2023).
[4] *See Meta for Developers: Advanced Matching,* FACEBOOK
https://developers.facebook.com/docs/meta-pixel/advanced/advanced-matching (last visited July 6, 2023).

Requests, an ordinary person[5] can easily find the real owner of the FID with this URL formulation: "http://www.facebook.com/[FID here]".  ¶ 77.

Plaintiff and Class Members were required to provide certain personal information in order to receive e-newsletters that contain articles and links to videos.  *See* ¶ 99.  Plaintiff-subscriber watched videos on the website, and the Operator Defendants shared his FID and Video Watching Data with Facebook (¶ 15) without seeking or obtaining consent from their subscribers, in violation of the VPPA. *See* ¶¶ 96-99; ¶¶ 101-05.

## **ARGUMENT**

**I.    The Operator Defendants are not an arm of the state and are not immune from suit.**

The Operator Defendants are not an arm of the State of Texas and are therefore not immunized by the Eleventh Amendment.[6]  *See* MTD 3-4.   Government contractors are not blanketly immune as if they were a state, and under the relevant factors, they are not immune here.

The *Clark* factors make clear that the Operator Defendants are not an "arm of the state" and are not blanketly immune from suit as state contractor. *Clark v. Tarrant Cty.*, 798 F.2d 736, 744-45 (5th Cir. 1986). The first *Clark* factor favors Plaintiff because Texas law does not consider the Operator Defendants to be an arm of the state. *Id.* (Factor One: "whether the state statutes and case law view the agency as an arm of the state"). Further, they are not funded or controlled by the State; in fact, they have full operational control of the team websites. *Id.* (weighing "the source of

---

[5] Plaintiffs detail how the Operator Defendants captured, collected, stored and shared subscribers' PII, and provided detailed imagery of the coding evincing that process.  ¶¶ 83-92. Operator Defendants suggest that this is the coding that an "ordinary person" would need to be able to read and understand in order for there to be VPPA violation.  But the manner in which an ordinary person is provided the PII and web watching history is alleged in Plaintiffs' Complaint. ¶ 77, 133.
[6] As set forth in Plaintiff's memorandum in opposition to the UT Defendants' motion to dismiss (the "UT Opp.") (Dkt. 27, at 4-17), incorporated by reference herein, the UT Defendants are not immunized from this suit.  Should this court reach that finding, for this reason alone, Operator Defendants' status as contractors for UT Defendants cannot immunize them from suit.

the entity's funding" and "the entity's degree of local autonomy").[7] They can also own property, and they can be sued in their own name. *Id.* (asking "whether the entity has the authority to sue and be sued in its own name . . .[or] the right to hold and use property"); *see* ¶52 (Operator Defendants own IP used in creating the team websites). They are not concerned with "statewide problems." *Id.* ("concerned primarily with local, as opposed to statewide, problems").

Plaintiffs allege that Operator Defendants are the ones who built and operated the websites in violation of the VPPA. Operator Defendants have full operational control over the websites, presenting pre-recorded video on the websites, advertising on the websites to generate their own revenue. They use their own code to track users, including the Pixel, and failed to give notice of their tracking practices, in violation of the VPPA. *See* ¶¶ 52-63. Operator Defendants could have operated the websites legally, but they did not. The Operator Defendants are not immune.

## II.    The Complaint should not be dismissed for failure to join an indispensable party.

The UT Defendants are not indispensable parties under Federal Rule of Civil Procedure 19(a)(1).  The Operator Defendants have the burden of showing that the UT Defendants are indispensable to this action or must be joined.  *U.S. v. Rutherford Oil Corp.*, 2009 U.S. Dist. LEXIS 40233, *8 (S.D. Tex. May 13, 2009).

*First*, the Court can accord complete relief from the Operator Defendants because, as set forth more fully in Sections I and III(C)(2), Operator Defendants control, own, and operate the websites at their own discretion in designing the websites and implementing the tracking methods. *See* FED. R. CIV. P. 19(a)(1)(A).  They are independently subject to the VPPA as the parties who

---

[7]  *See also Longhorn Foundation FAQs,* UNIVERSITY OF TEXAS AT AUSTIN ATHLETICS, https://texassports.com/sports/2023/4/7/FAQs.aspx (last visited July 6, 2023) ("[UT] Athletics is entirely self-supporting, meaning that all private donations directly benefit the needs of student-athletes, coaches, and staff. There is no state funding allocated to the Athletics Department.").

can cause the VPPA violations to stop. So this is not a situation where only "hollow" relief can be granted in UT Defendants' absence. *See State Farm Lloyds v. Four Wives*, 2023 U.S. Dist. LEXIS 51571, *13 (S.D. Tex. Feb. 24, 2023) (noting "complete relief" refers to relief among the parties, not between a party and an absent party); *Rutherford Oil Corp.*, 2009 U.S. Dist. LEXIS 40233, at *6 (in making this determination, the court does not consider "the effect on absent parties."). Even if a third party could also be liable here, the Court can still award full relief against Operator Defendants. *Id.* at *6. *Second*, Operator Defendants have not identified any risks to themselves of inconsistent obligations, and there are none. *See Broad. Music, Inc. v. Armstrong*, 2013 U.S. LEXIS 103938, *19-21 (W.D. Tex. Jul. 24, 2013).[8]

Under the Rule 19(b) factors, this case should proceed even in the absence of the UT Defendants As to its first factor, any prejudice of a judgment entered in UT Defendants' absence is mitigated because Operator Defendants' interests are aligned with UT Defendants; the Operator Defendants are vigorously defending the VPPA claims; and they are either solely responsible or have shared responsibility  (with full indemnity obligations[9] either way). *See Adelman v. Peter*, 2011 U.S. Dist. LEXIS 171704, at *7 (S.D. Tex. Sep. 29, 2011); *Texas v. Ysleta Del Sur Pueblo*, 2016 U.S. Dist. LEXIS 70159, at *55-56 (W.D. Tex. May 27, 2016); *Gensetix, Inc. v. Bd. Of Regents*, 966 F.3d 1316, 1325-26 (Fed. Cir. 2020). On the second, any prejudice could be lessened or avoided by shaping the relief. By awarding monetary relief only against the Operator

---

[8] Moreover, the UT Defendants are not necessary parties because they failed to claim an interest in this action.  Indeed, they sought to be *dismissed* from the action, disclaiming any interest.  *See Rajet Aeroservicios S.A. de C.V. v. Castillo Cervantes*, 801 F.App'x 239, 246-47 (5th Cir. 2020) (reversing dismissal for failure to join required parties where no non-party had claimed any interest relating to the subject of the action); *Zapata v. Hays Cty. Junvenile Det. Ctr. & Brett Littlejohn*, 2022 U.S. Dist. LEXIS 89178, at *20 (W.D. Tex. May 18, 2022) (Pitman, Mag. J.).
[9] *See* UT Opp., at 14 (documenting Operator Defendants' indemnity obligations to its college partners; any judgement or settlement would not result in costs or payments from the State)

Defendants (with or without injunctive relief against UT Defendants), injured class members can seek compensation instead of getting nothing after an omnibus dismissal.  The third factor weighs against dismissal because the Court can grant adequate relief in UT Defendants' absence. The fourth factor weighs against dismissal because, if UT Defendants are immune from suit and this case cannot proceed without them, class members would be robbed of any form of relief. *Id.* at 1326 (in reversing dismissal, noting that lack of alternative recourse weighs against dismissal).

Operator Defendants' reliance on *Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 268 (5th Cir. 2022) is misplaced. There, the court found that a trademark dispute over a university's alma mater could not proceed without the university's participation.  The court's decision to dismiss was principally based on the fact that the defendant, as the university's licensing agent, did not share the same interests in ownership over the university's alma mater, and that the better forum for this dispute was the USPTO.  *Id.* at 269-70.  Here, Operator Defendants share the same interests and defenses as UT Defendants, mitigating prejudice to UT Defendants, and unlike in *Lee*, Plaintiff and Class Members have no other recourse beyond this action.

## III.   Plaintiff has stated a claim under the VPPA.

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in plaintiff's favor and all facts pleaded therein must be taken as true.  *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

### A.  Plaintiff is a consumer under the VPPA.

Plaintiff has alleged facts establishing that he is a consumer under the VPPA, which the Act defines as a "renter, purchaser, or subscriber of goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).  Plaintiff alleged that he provided personal information – *i.e.*,

6

first and last name, email address, and zip code – to Operator Defendants in exchange for an exclusive, scheduled newsletter, which includes content reserved "just for Longhorn Scoreboard subscribers[.]"  ¶¶ 3, 99.  These allegations satisfy the "consumer" element of the VPPA because the commitment between Operator Defendants to supply periodic newsletters in exchange for Plaintiff's personal information is all that the VPPA requires.  *See Harris v. Pub. Broad. Serv.*, 2023 U.S. Dist. LEXIS 45888, *5-11 (N.D. Ga. Mar. 20, 2023) (finding that plaintiff was a consumer under same circumstances as here); *Lebakken v. WEBMD, LLC*, 2022 U.S. Dist. LEXIS 201010, *7-10 (N.D. Ga. Nov. 4, 2022) (same); *Belozerov v. Gannett Co.*, 2022 U.S. Dist. LEXIS 229436, *7 (D. Ma. Dec. 20, 2022) (same); *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487-89 (1st Cir. 2016) (finding same, and that payment that is not necessary).

Operator Defendants assert that Plaintiff is not a consumer under the VPPA for two reasons. *First*, Operator Defendants cursorily argue they are not liable to Plaintiff who did not subscribe to their services.  MTD 8.  Their argument fails because, as Plaintiff alleges, Operator Defendants are the owners and operators of the website at issue, and as such, *they* solicited Plaintiff's personal information in exchange for the newsletter subscription, and Plaintiff subscribed his personal information to Operator Defendants' vast database.  *See* ¶¶ 43-49; 68.[10]  What is more, the Operator Defendants implemented the steps leading to the VPPA violation (*i.e.*, web watching, employing the Pixel, use of non-anonymized website naming).  As such, on a motion to dismiss, where Plaintiff's allegations must be taken as true, Operator Defendants cannot dispute that they control the team websites and that Plaintiff subscribed his personal information to Operator Defendants.

---

[10] Based on the investigation underpinning the Complaint, the newsletters for subscribers to the team websites, including the Longhorn website, contain a privacy link that – rather than lead to the university's terms – links to the Operator Defendants' policies page.

*Second*, Operator Defendants contend that Plaintiff is not a consumer because his subscription was for a newsletter rather than for a video product. MTD 8-9. Operator Defendants' argument stems solely from a New York District Court decision, *Carter v. Scripps Networks, LLC*, 2023 U.S. Dist. LEXIS 71150 (S.D.N.Y. Apr. 24, 2023). The rationale in *Carter* ignores prior precedent and goes beyond the plain meaning of the text where no ambiguity exists in the statutory language, and because it failed to interpret the statute liberally.

The VPPA does not define or otherwise restrict the meaning of "subscriber" as the court in *Carter* held. *Id* at *15-16. Instead, "the phrase 'goods or services' [from the VPPA] is generally construed broadly to encompass 'all parts of the economic output of society.'" *Lebakken*, 2022 U.S. Dist. LEXIS 201010, at *8. The court in *Carter* agreed that "the statute does not limit or qualify 'goods or services' to video materials," but then applied a statutory interpretation to reach its limited conclusion. *Carter*, at *14. In doing so, *Carter* incorrectly interpreted the statute, narrowing previously defined general terms because the terms were used in a narrower context later in the statute. *See Sterk v. Redbox, LLC*, 770 F.3d 618, 624-25 (7th Cir. 2014) (rejecting constraint of the VPPA's meaning and application).[11]

### B.    Operator Defendants are VTSPs under the VPPA.

Operator Defendants are VTSPs[12] because they delivered pre-recorded videos to subscribers, and developed the infrastructure, including video availability, as well as the

---

[11] The court in *Carter* misconstrued the 1988 Senate report for congressional intent. *Carter*, at *16; MTD 8. *Carter* and Defendants omit language immediately preceding and following the Senate report citation. The excerpt discusses the use of "video" within the definition of "personally identifiable information." *See* Yarborough Decl., ¶ 6 (reproducing excerpt), Ex. 1 (Senate Report 100-599, at 12). The senate never implied that a VTSP was precluded from sharing a customer's PII if that customer purchased or subscribed to its video services.

[12] The VPPA defines Video Tape Service Providers ("VTSP") as those who "engage[] in the business, in or affecting interstate or foreign commerce, of rental, sale or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ."  18 U.S.C. § 2710(a)(4).

underlying coding. Operator Defendants tout that "[s]treaming is [their] single most opted in product for [their] partners."  ¶ 37.

Operator Defendants "standardize, host, and control the video hosting services."  ¶ 58. Operator Defendants "draft[] code and provid[e] a digital space for videos to reside," MTD at 10, and also contract with video streaming platforms such as CBS Interactive Advanced Media to host and deliver the content to subscribers.  ¶ 38, ¶¶ 58-60.  Watching videos on the Longhorns Website involves the Operator Defendants requesting video data from storage when requested by subscribers, then "delivering" that pre-recorded video to a subscriber's browser.[13]

Operator Defendants tailored their delivery of video content to subscribers. Operator Defendants have streaming services that deliver audio visual material. They downplay their involvement saying they are "[s]imply drafting code[.]" MTD at 9-10, This "code" represents the media player and the fetching and delivery of video material, just like Netflix or YouTube. The Operator Defendants unquestionably fit the definition of VTSP.

### C.  Operator Defendants knowingly disclosed Plaintiff's PII.

The court should summarily reject Operator Defendants' contention that they did not knowingly disclose Plaintiff's PII because every court to have considered the "knowingly" question as it pertains to the Pixel has sustained the pleading. *See, e.g., Adams v. Am.'s Test Kitchen, LP*, 2023 U.S. Dist. LEXIS 113127, at *19-21 (D. Mass. June 30, 2023); *Harris v. Pub. Broad. Serv.*, 2023 U.S. Dist. LEXIS 45888, at *9 (N.D. Ga. Mar. 20, 2023); *Feldman v. Star Trib. Media Co. LLC*, 2023 U.S. Dist. LEXIS 37416, at *24-32, (D. Minn. Mar. 7, 2023); *Goldstein v. Fandango Media, LLC*, 2023 U.S. LEXIS 71415, at *10-11 (S.D. Fla. Mar. 7, 2023).

---

[13] *See* ¶ 59, figure 4, which depicts the Operator Defendant's media player obtaining video from www.youtube.com/0b0ed8d1-d324-427f-99b5-eeaa661ad5a3 and delivering it to the subscriber's device through the Longhorns Website.

### 1.   The information Operator Defendants disclosed is PII.

Operator Defendants disclosed Plaintiff's PII, which is "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The Ninth Circuit described "PII" as "information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (citation omitted). While the Ninth Circuit concluded that a device serial number was not PII because it identified "a sizable 'pool' of possible viewers," it recognized that a "Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual." *Id.* at 986.

Operator Defendants sent information that includes the website users' Facebook User ID number ("UID") (¶ 91) and title of the video being watched or the URL of the video (¶¶ 84, 88) to Facebook. Importantly, "[a] Facebook UID can be used, by anyone, to easily identify a Facebook user. Any person, even without in-depth technical expertise, can utilize the UID […] by simply appending the Facebook UID to www.facebook.com (e.g., www.facebook.com/[UID_here]), [… which] will direct the browser to the profile page, and all information contained in or associated with the profile page, for the [Facebook UID]." ¶ 77. As such, Plaintiff has sufficiently disclosed that the information constitutes PII.

Relying primarily on *Robinson v. Disney Online*, 152 F. Supp. 3d 176 (S.D.N.Y. 2015) and *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016), Operator Defendants argue that the information they disclosed is merely a "static digital identifier" that does not identify who a person is. MTD 11-13. However, "[t]he statute does not require a name.… One can be identified in many ways: by a picture, by pointing, by an employee number, by the station or office or cubicle

10

where one works, by telling someone what 'that person' rented." *In re Hulu Priv. Litig.*, 2014 U.S. Dist. LEXIS 59479, at *35-38 (N.D. Cal. Apr. 28, 2014).

In *Hulu*, the court found that "[t]he Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user." *Id.* at *46. *See also Stark v. Patreon, Inc.*, 2022 U.S. Dist. LEXIS 187602, at *24-26 (N.D. Cal. Oct. 13, 2022) (holding UID was "PII"); *Feldman*, at *29 (information disclosed via Meta pixel "is both reasonably comprehensible and plausibly as usable as the GPS data addressed in *Yershov*); *Czarnionka v. Epoch Times Ass'n*, 2022 U.S. Dist. LEXIS 209067, at *7 (S.D.N.Y. Nov. 17, 2022) ("[t]he [UID] itself represents a particular individual"); *Belozerov*, at *9 (same); *Lebakken*, at *10-12 (same); *Ambrose v. Bos. Globe Media Partners LLC*, 2022 U.S. Dist. LEXIS 168403, at *4-6 (D. Mass. Sept. 19, 2022) (same).

Operator Defendants' reliance on *Robinson* and *Nickelodeon* is misplaced because those courts concluded merely that device serial numbers and information requiring additional details from other sources are not PII. *See Feldman*, 2023 U.S. Dist. LEXIS 37416, at *25 (noting that *Nickelodeon* dealt with disclosure of an IP address, browser, operating systems setting, and computing device's device identifier, but UID's are different and constitute PII).  Those circumstances are distinguishable from those at issue here because "[t]he [UID] . . . is sufficient for an ordinary person to identify Plaintiff and similarly situated individuals by simply typing 'facebook.com/[Facebook ID]' into a web browser. In this way, the [FID] is clearly distinguishable from information found not to qualify as PII by courts adopting the 'ordinary person' standard[.]" *Czarnionka*, 2022 U.S. Dist. LEXIS 226328, at *3.

### 2. Operator Defendants knowingly disclosed Plaintiff's information.

Operator Defendants' assertion that they did not disclose Plaintiff's information because Plaintiff's browser did (MTD 13-15) is belied by Plaintiff's allegations and VPPA authority. Plaintiff alleged facts establishing Operator Defendants' knowing disclosure of his viewing

information to Facebook. *See, e.g.*, ¶¶ 9, 30, 91-92. A defendant discloses PII knowingly when it possesses "consciousness of transmitting the private information." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). It does not matter whether the defendant possesses "knowledge of illegality or potential consequences," *see Senne v. Vill. of Palatine*, 695 F.3d 597, 603 (7th Cir. 2012), nor does it matter whether "third parties actually see the disclosed information … to constitute a violation." *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 670 (E.D. Pa. 2015).

Plaintiff alleges that Operator Defendants – not Facebook, and not Plaintiff himself – intentionally and knowingly installed the Pixel on the Longhorns Website. ¶ 9, 69-75. Operator Defendants used the tracking tools it embedded in its websites to automatically transmit Plaintiffs' viewing information to Facebook. ¶¶ 78-92. The tracking methods that Operator Defendants installed on their websites require no further action on the part of the Defendants, Facebook, or any other third-party. ¶ 91. Operator Defendants do not (and cannot) deny that they intentionally decided to collect and share Plaintiff's PII through their knowing decision to obtain these tracking methods and implement them into the Longhorn Website. These factual allegations underpin the fundamental allegation that "Defendants knowingly and systematically disclosed Plaintiffs' personal viewing information to Facebook." ¶¶ 30, 92.

Operator Defendants cannot shirk liability by claiming that it was Plaintiff's browser that disclosed the cookies and FIDs to Facebook because it was *Operator Defendants* that intentionally configured their websites to automatically force Plaintiff's browsers to disclose this information. Had they not installed the tracking devices on the websites, the websites would not (and could not) have automatically transmitted the viewing information to Facebook. *See Feldman*, at *15-21.

Nor does it matter whether Plaintiff previously gave Facebook consent to collect "such information" (MTD 15) because assuming, *arguendo,* that policies exist and that Plaintiff was

aware of them,[14] Facebook's policies do not somehow provide Plaintiff with knowledge of what viewing information from which website may be tracked and conveyed to Facebook, nor does it constitute informed, written consent – as required by the VPPA – *for the Operator Defendants* to share Plaintiff's viewing information.

Courts have consistently held that knowing disclosure is adequately alleged where, as here, a defendant consciously implements the Facebook Pixel tracking tool into its website, which then automatically transmits users' viewing information to Facebook. *See, e.g.*, *Czarnionka*, 2022 U.S. Dist. LEXIS 209067, at *10-11 (sufficiently alleged knowing disclosure in violation of VPPA when defendant "programmed the Facebook Pixel into its website code, knowing that Facebook would receive video titles and subscriber's FID when a subscriber watched a video."); *Feldman*, 2023 U.S. Dist. LEXIS 37416, at *29-32 (same); *Belozerov*, 2022 U.S. Dist. LEXIS 229436, at *11-12 (same); *Lebakken*, 2022 U.S. Dist. LEXIS 201010, at *12-14 (same).[15] Operator Defendants' argument that it does not "knowingly" disclose Plaintiffs' personal information because they purportedly did not know whether Plaintiff had an FID, or whether Plaintiff's viewing information would be successfully transmitted to Facebook (MTD 15) fails because, as set forth *supra*, Operator Defendants intentionally configured the their websites to gather users' FID and disclose them to Facebook. That some users may not have an FID is irrelevant.

---

[14] As an initial matter, the Court must reject Operator Defendants' argument because it has offered no evidence whatsoever that Plaintiff ever saw or agreed to the proffered Facebook policy.

[15] Additionally, while not explicitly discussing the VPPA's "knowing" disclosure element, numerous other courts have recently sustained VPPA claims where a defendant implemented the Facebook Pixel code into its website to automatically disclose users' viewing information to Facebook. *See e.g.*, *Harris v. Pub. Broad. Serv.*, 2023 U.S. Dist. LEXIS 45888 (N.D. Ga. Mar. 20, 2023); *Stark v. Patreon, Inc.*, 2022 U.S. Dist. LEXIS 187602, (N.D. Cal. Oct. 13, 2022); *Ambrose v. Boston Globe Media Partners LLC*, 2022 U.S. Dist. LEXIS 168403 (D. Mass. Sept. 19, 2022); *Cappello v. Walmart Inc.*, 2019 U.S. Dist. LEXIS 237326 (N.D. Cal. Apr. 5, 2019); *Stark v. Patreon, Inc.*, 2023 U.S. Dist. LEXIS 27481 (N.D. Cal. Feb. 17, 2023).

**IV.    The VPPA does not facially violate the first amendment.**

In considering a constitutional challenge, "[e]very statute is presumed to be constitutional." *Munn v. Illinois*, 94 U.S. 113, 123 (1876). Defendants bear the burden of demonstrating "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections […] before a statute will be struck down as facially overbroad." *Hersh v. United* States, 553 F.3d 743, 762 (5th Cir. 2008). For the reasons that follow, Operator Defendants have failed to meet their burden in facially invalidating the VPPA. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (facial invalidation is "strong medicine" that should be employed "sparingly and only as a last resort").  This Court should follow the body of case law upholding the constitutionality of state laws modeled on the VPPA as well as other statutes that limit the dissemination of the private information citizens.[16]

### A.  The VPPA regulates commercial speech and satisfies intermediate scrutiny.

The VPPA regulates commercial speech. MTD at 16 ("'information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider' – is commercial speech."). The federal "Constitution accords less protection to commercial speech than to other constitutionally safeguarded forms of expression." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 64-65 (1983); *Sorrell v. IMS Health Inc.*, 564 U.S. 552,

---

[16] *See, e.g.*, *Boelter v. Advance Magazine Publrs. Inc.*, 210 F. Supp. 3d 579, 602 (S.D.N.Y. 2016) (upholding Michigan's Preservation of Personal Privacy Act ("PPPA") and finding it regulated only commercial speech); *Boehner v. McDermott*, 484 F.3d 573, 578 n.2 (D.C. Cir. 2007) (citing the VPPA for the principle that "government can also limit disclosures by persons who are not its employees without running afoul of the First Amendment . . . those who sell or rent video tapes or DVDs ordinarily may not reveal 'personally identifiable information concerning' their customers."); *Trans Union Corp. v. F.T.C.* ("*Trans Union I*"), 245 F.3d 809, 818 (D.C. Cir. 2001) (rejecting First Amendment challenge to Fair Credit Reporting Act); *Trans Union Corp. v. F.T.C.* ("*Trans Union II*"), 267 F.3d 1138, 1140-41 (D.C. Cir. 2001); *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937 (7th Cir. 2015) (upholding analogous Driver's Privacy Protection Act against a First Amendment challenge).

579 (2011) (The government's interest in protecting consumers explains "why commercial speech can be subject to greater governmental regulation than noncommercial speech.") (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 426 (1993)); *First Resort, Inc. v. Herrera*, 80 F. Supp. 3d 1043, 1049 (N.D. Cal. 2015), *aff'd*, 860 F.3d 1263 (9th Cir. 2017).

Restrictions of commercial speech implicate an intermediate scrutiny analysis. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 564-66 (1980) (four-factor test). "First, the speech 'must concern lawful activity and not be misleading.' Second, '[the court] ask[s] whether the asserted governmental interest is substantial.' Then, '[i]f both inquiries yield positive answers, [the court] must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.'"[17] *Contest Promotions, LLC v. City & Cnty. of San Francisco*, 874 F.3d 597, 601 (9th Cir. 2017) (citing *Central Hudson*, 447 U.S. at 566 (internal citations omitted)). For the reasons set forth below, the VPPA satisfies intermediate scrutiny.

### 1. The VPPA furthers a substantial government interest in protecting consumer privacy.[18]

The First Amendment enshrines the same types of personal liberty interests as the VPPA, which protects long-recognized constitutional privacy rights. The government's substantial interests underlying the VPPA are accurately stated in the United State's recent memorandum submitted in *Stark v. Patreon, Inc.*, No. 3:22-cv-03131-JCS, Doc. 49-1 (N.D. Cal. Dec. 5, 2021)

---

[17] The fourth factor "requires 'a fit between the legislature's ends and the means chosen to accomplish those ends, [ ]a fit that is not necessarily perfect, but reasonable[,] ... a means narrowly tailored to achieve the desired objective.'" *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 846 (9th Cir. 2017) (quoting *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477, 480 (1989) (citations and internal quotation marks omitted)).

[18] Because Defendants do not— and cannot— contend that the disclosure of Plaintiffs' video watching behavior on Defendants' websites is not otherwise unlawful or misleading, the Court's intermediate scrutiny analysis begins with the "substantial interest" requirement.

(Decl., Ex. 2), where it intervened to defend Congress' intent to protect consumer's private information.  Decl., Ex. 2 at 14:22-15:10; *see also See Whalen v. Roe*, 429 U.S. 589, 606 (1977) (Brennan, J., concurring) ("The Court recognizes that an individual's 'interest in avoiding disclosure of personal matters' is an aspect of the right of privacy[.]"); *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335, 2348 (2020) (noting "Congress's continuing interest in protecting consumer privacy"); *Advance Mag.*, 210 F. Supp. 3d at 599 ((finding the state has substantial interest in protecting consumer privacy); *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1349 (S.D. Fla. 2022) ("Plaintiff identifies a substantial government interest that courts have consistently recognized: consumer protection and privacy.").

Operator Defendants' claim that there is no "persuasive evidence" that the VPPA's restrictions on information are "part of a long tradition of proscription" is unsupported by any authority[19] and contrary to the law.

### 2.  The VPPA directly advances the government's interest in protecting consumer privacy.

The VPAA directly advances the governmental interest of protecting consumer privacy. The court in *Hearst*, upholding Michigan's analogous statute, stated:

> The statute brings within its ambit the individuals who sell those goods, restricting the reasons for which they can disclose the identifying information they collect about their customers. Preventing the disclosure of consumer data to third parties by sellers—those most likely to possess and collect that information—reduces the likelihood of consumers' private details becoming public.

*Boelter v. Hearst Communs., Inc.*, 192 F. Supp. 3d 427, 449 (S.D.N.Y. 2016); *accord Advance Mag.*, 210 F. Supp. 3d at 600; *see also* S. Rep. 100–599; *Trans Union II*, 267 F.3d at 1142.

---

[19] Defendants quote *dicta* in *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 792 (2011) to support the applicable standard (MTD 18), but *Brown* is entirely inapposite and deals with a ban on sales of video games to minors.

Without any reliance on analogous authority, Operator Defendants argue that the VPPA's consent requirements fail this prong because Section 2710(b)(2)(B) includes "onerous and arbitrary specifications" detailing how informed consent must be obtained under the Act, instead of leaving that requirement to be self-servingly determined by entities faced with compliance. (MTD 19-20). However, "Congress amended the VPPA in 2012 to protect against the exact "free speech-chilling" effect Defendants purportedly seek to avoid "by clarifying that video tape service providers may obtain informed, written consent of consumers on an ongoing basis via the Internet." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1253 (11th Cir. 2015) (quotation marks and citation omitted). As such, the VPPA provides concrete and simple-to-follow instructions to ensure that businesses providing video content can confidently comply with the VPPA.

### 3. The VPPA's restrictions on commercial speech reach no further than necessary to accomplish the government's objective.

The VPPA also satisfies the third prong of the intermediate scrutiny analysis. This factor considers "the 'fit' between the legislature's ends and the means chosen to accomplish those ends." *Boelter*, 192 F. Supp. 3d at 449 (citation omitted). "[A] fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served,' that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective." *Fla. Bar v. Went For It*, 515 U.S. 618, 632 (1995) (citation omitted).

The VPPA appropriately restricts *only* the disclosure of certain consumer video information that would reveal that a company's consumer watched a specific video. Like Michigan's statute, the VPPA "advances the [government]'s goals without unduly burdening Defendant's ability to engage in commerce." *Boelter*, 192 F. Supp. 3d at 449; *Advance Mag.*, 210 F. Supp. 3d at 602

(finding "the PPPA is sufficiently narrowly drawn").[20]

Defendants raise no concerns specific to this prong beyond their potential inconvenience in collecting informed consent, which, as discussed *supra*, does not satisfy their heavy burden.

### B.  The VPPA is not vague or overbroad.

#### 1.  Defendants' overbreadth challenge fails as a matter of law with respect to the VPPA's restriction of commercial speech.

The Supreme Court has held that "the overbreadth doctrine does not apply to commercial speech", dooming Operator Defendants' overbreadth challenges from the gate. *Hoffman Ests. v. Flipside, Hoffman Estates*, 455 U.S. 489, 497 (1982); *Stark*, 2023 U.S. Dist. LEXIS 27481, at *18 (quoting *Bd. of Trustees of State Univ. of N.Y. v. Fox* ("*SUNY*"), 492 U.S. 469, 481, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989)). The United States has taken the same position in its intervening memorandum addressing challenges to the VPPA. Decl., Ex. 2 at 10:19-20; *accord Boelter*, 192 F. Supp. 3d at 451-52; *Advance Magazine*, 210 F. Supp. 3d at 602-03.

Here, Operator Defendants' facial overbreadth analysis makes no attempt at all to argue that the VPPA is unconstitutionally overbroad with respect to noncommercial speech. MTD at 15, 16, 20. As such, Defendants' overbreadth challenge fails as a matter of law.

Alternatively, the Court should reject any noncommercial-speech arguments because the hypothetical situations in which the VPPA could apply to non-commercial speech are "improbable" or "infrequent" "in relation to the statute's application to commercial speech." Decl., Ex. 2 at 17:27-18:1.

---

[20] Also like Michigan's analogous statute, the VPPA does not prohibit the disclosure of a consumer's video information from sources other than a video tape service provider, mooting any hypothetical concerns that a consumer's viewing information may become matters of public discourse. *See Hearst*, 192 F. Supp. 3d at 452 (noting that to the extent the public had an interest in a consumer's information, the law did not restrict disclosure from other sources and a business could still obtain consumer consent).

Finally, as the court in *Stark* held, courts cannot consider an overbreadth challenge based on the VPPA's potential impact on *noncommercial* speech until after defendants have developed a factual record to support the court's review. *Stark*, 2023 U.S. Dist. LEXIS 27481, at *41-44 (denying without prejudice defendant's facial challenge to VPPA as to noncommercial speech to allow defendant to reassert its constitutional arguments on a factual record).

### 2.   The VPPA is not overbroad or vague.

Operator Defendants' observation that numerous other businesses have violated the VPPA and that the Act does not define the everyday words "business" and "delivery" (*see* MTD at 17-18), do nothing to meet their burden in demonstrating that the VPPA is vague or overbroad. . "The touchstone of a facial vagueness challenge in the First Amendment context [ ] is not whether *some* amount of legitimate speech will be chilled; it is whether a *substantial* amount of legitimate speech will be chilled." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1152 (9th Cir. 2001) (emphasis in original). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989); *see also Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) ("Condemned to the use of words, we can never expect mathematical certainty from our language.").

The VPPA unambiguously prohibits a VTSP from knowingly disclosing PII concerning "any consumer of" the VTSP, with limited exceptions. 18 U.S.C. § 2710. VTSP is clearly defined. *See* § 2710(a)(4); *see also supra* § III(B). Consumer is also clearly defined. *See* § 2710(a)(1). Operator Defendants disingenuously isolate the terms "business" and "delivery" in the definition of VTSP and contend it is not clear which entities are VTSPs under the law. When read in context however, the definitions of VTSP and consumer are clear.  Courts have not struggled to interpret

these provisions,[21] and Operator Defendants can cite only hypothetical *allegations* – not actual evidence – of chilled speech. *See Hersh*, 553 F.3d at 762 ("The fact that a court can hypothesize situations in which the statute will impact protected speech is not alone sufficient"). Operator Defendants' failure to show a "significant imbalance between the protected speech the statute should not punish and the unprotected speech it legitimately reaches" is fatal. *Id* at 762-63.

Defendants' overbreadth and vagueness arguments similarly fail because "a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010); *Hoffman Ests.*, 455 U.S. at 495. As set forth above in § III(B), the VPPA clearly applies to Operator Defendants' conduct.

## V.      The VPPA is not unconstitutional as applied to Operator Defendants.

Defendants also cursorily argue that the VPPA "as applied to Learfield" is vague and overbroad.  Defendants' "as-applied" challenge is based on the same generic arguments as their facial challenge, which this Court should reject because the VPPA satisfies intermediate scrutiny and is not overbroad or vague, as set forth *supra*. *See Advance Magazine*, 210 F. Supp. 3d at 597-602 (rejecting as-applied challenge to PPPA at pleadings stage); *Boelter*, 192 F. Supp. 3d at 447-51 (rejecting as-applied challenge to VRPA at pleadings stage).

## <u>CONCLUSION</u>

For the foregoing reasons, the Operator Defendants' motion to dismiss should be denied. Should the Court grant the Motion in any part, Plaintiff respectfully requests leave to amend.

---

[21] *See Belozerov*, 2022 U.S. Dist. LEXIS 29436, at *6-8; *Goldstein*, 2023 U.S. Dist. LEXIS 71415, at *10 ("to answer the question of whether Defendant is a [VTSP], the Court must determine the nature of Defendant's business"); *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221-22, (C.D. Cal. Mar. 2, 2017) ("the developers of many other products or services that might be peripherally or passively involved in video content delivery do not fall within the statutory definition of a [VTSP]").

20

Dated: July 7, 2023                  Respectfully submitted,

**FOSTER YARBOROUGH PLLC**

By: _/s/ Patrick Yarborough_
Patrick Yarborough
Marshal J. Hoda _(pro hac vice)_
Jeffrey Lucas Ott
917 Franklin Street, Suite 220
Houston, TX 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202
Email: patrick@fosteryarborough.com
Email: marshal@fosteryarborough.com
Email: luke@fosteryarborough.com

**LEVI & KORSINSKY, LLP**

By: _/s/ Mark S. Reich_
Mark S. Reich (_pro hac vice_)
Courtney E. Maccarone*
Gary S. Ishimoto*
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cmaccarone@zlk.com
Email: gishimoto@zlk.com
_Counsel for Plaintiff_

*_pro hac vice_ forthcoming

_Attorneys for Plaintiff Adam Brown_

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed on July 7, 2023 with the Clerk of Court using the CM/ECF system, which will automatically send email notifications of such filing to all attorneys of record in this case.

_/s/ Patrick Yarborough_