IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ADAM BROWN, on Behalf of Himself and All Others Similarly Situated, | § § § | NO. 1:23-CV-00374-DAE |
| Plaintiffs, | § § § | |
| vs. | § § | |
| LEARFIELD COMMUNICATIONS, LLC, SIDEARM SPORTS, LLC, THE UNIVERSITY OF TEXAS AT AUSTIN, AND THE UNIVERSITY OF TEXAS AT AUSTIN ATHLETICS, | § § § § § § | |
| Defendants. | § § | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed by Defendants the University of Texas at Austin (the "University") and the University of Texas at Austin Athletics ("UT Athletics") (collectively, "UT") on June 2, 2023.  (Dkt. # 21.)  Plaintiff Adam Brown ("Brown") filed a Response on June 21, 2023.  (Dkt. # 27.)  UT filed a Reply on June 27, 2023.  (Dkt. # 30.)  After careful consideration of the memoranda filed in support of and against the motion, the Court, for the reasons that follow, **GRANTS** UT's Motion to Dismiss.  (Dkt. # 21.)

## BACKGROUND

Brown is one of many subscribers to a website operated by UT (the

"Longhorns Website")[1] providing users with access to videos, clips, and other

content related to the university's athletics.  (Dkt. # 1 at 2.)  Brown alleges that the

Longhorns Website does not disclose that subscribers' personal identifying

information ("PII") will be captured by the site's Facebook Pixel and then

transferred to Facebook, purportedly exposing the subscribers' PII to "any person

of ordinary technical skill who received that data."  (Id.)  Brown contends that UT

and co-defendants Sidearm Sports, LLC and Learfield Communications, LLC

(collectively, the "Operator Defendants") purposefully implanted the Pixel in order

to gather marketing data, and that such acts constitute a violation of the Video

Privacy Protection Act ("VPPA").  (Id. at 3.)  Brown filed the instant class action

lawsuit on April 3, 2023.  (Id.)  UT moves to dismiss Brown's claims against it

under principles of sovereign immunity; accordingly, the Court reaches only

jurisdictional issues in the instant motion to dismiss.  (Dkt. # 21.)

## LEGAL STANDARD

Rule 12(b)(1), under which UT raises its claim of sovereign

immunity, governs dismissal for lack of subject matter jurisdiction.  See F.D.I.C. v.

Meyer, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in

---

[1] The website is located at https://texassports.com/.

2

nature.").  In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely

on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts;

or (3) the complaint supplemented by undisputed facts and the court's resolution of

disputed facts."  MCG, Inc. v. Great W. Energy Corp., 896 F.2d 170, 176 (5th Cir.

1990).  Any dismissal under Rule 12(b)(1) on the basis of Eleventh Amendment

sovereign immunity must be without prejudice.  Warnock v. Pecos Cty., Tex., 88

F.3d 341, 343 (5th Cir. 1996).

## DISCUSSION

UT moves to dismiss Brown's claims as barred by the doctrine of

sovereign immunity.  (Dkt. # 21 at 7.)  The Eleventh Amendment commands that

"[t]he judicial power of the United States shall not be construed to extend to any

suit in law or in equity, commenced or prosecuted against one of the United

States[.]"  U.S. CONST. amend. XI.  In other words, federal suits against a state or

state agency are generally barred.  See Moore v. La. Bd. of Elementary and

Secondary Educ., 743 F.3d 959, 963 (5th Cir. 2014).  Courts in the Fifth Circuit

have repeatedly held that UT is "undoubtably considered an arm of the state of

Texas" for sovereign immunity purposes.  Travina v. Univ. of Tex., No. 1-21-CV-

01040-RP, 2022 WL 1308828, at *3 (W.D. Tex. May 2, 2022) (citing Daniel v.

U.T. Sw. Med. Ctr., 960 F.3d 253 (5th Cir. 2020)).  Thus, UT is presumptively

immune from the instant suit unless Brown demonstrates that UT waived its

3

sovereign immunity by consenting to the suit or that Congress has clearly and validly abrogated sovereign immunity.  <u>Perez v. Region 20 Educ. Serv. Ctr.</u>, 307 F.3d 318, 326 (5th Cir. 2002) (citing <u>Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 670 (1999)).

UT argues that the University has not consented to suit, nor has Congress abrogated its immunity under the VPPA.  (Dkt. # 21 at 7.)  UT further contends that UT Athletics has no legal existence separate from the university itself, and thus it is entitled to sovereign immunity as well.  (<u>Id.</u> at 8.)  Brown insists that the unique set of facts here support a waiver of immunity and that the VPPA abrogates state sovereign immunity.  (Dkt. # 27.)  The Court considers each argument in turn.

I.    <u>Waiver by Consent</u>

"[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996).  Generally, courts will find a waiver "either if the State voluntarily invokes [federal] jurisdiction, or else if the State makes a 'clear declaration' that it intends to submit itself to [federal] jurisdiction[.]"  <u>Coll. Sav. Bank</u>, 527 U.S. at 675-76 (internal citations omitted).  UT has neither invoked this Court's jurisdiction nor expressly consented to being sued in federal court.  And Brown makes no argument that either occurred.

Instead, Brown urges that UT's contractual arrangement with the Operator Defendants, relinquishing control of its website to private entities, is a "non-governmental" function falling outside the scope of sovereign immunity. (Dkt. # 27 at 9.)  But there is simply no precedent to support any other carveout to the Eleventh Amendment sovereign immunity doctrine.  While Brown points to some examples of Texas state court cases suggesting that contracting with private entities can constitute a waiver, he ignores the Supreme Court case directly on point, which holds to the contrary.  See Coll. Sav. Bank, 527 U.S. at 684 (holding that there is "no principled reason why [behaviors resembling those of 'market participants'] should enter into our waiver analysis" and citing cases such as Seminole Tribe and Ex parte New York where it stated the same).[2]  Therefore, the Court concludes that UT did not waive sovereign immunity.

## II.   Congressional Abrogation

The Court next considers whether the VPPA abrogates state sovereign immunity.  Brown avers that it does, noting that the legislative history indicates a desire to "give meaning to the right of privacy" and that no state, before now, has ever tried to assert sovereign immunity from the VPPA in the 35 years since its

---

[2] Moreover, a state's waiver of sovereign immunity in state court does not mean that the state has waived Eleventh Amendment immunity in federal court.  Perez, 307 F.3d at 332.  And in the cases Brown cites, the state courts considered waiver based on state law breach of contract claims, not federal statutes.  They are therefore unpersuasive to the Court.

passage.  (Dkt. # 27 at 20.)  But general references to a statute's purpose and creation of a cause of action do not suffice to establish Congressional intent to abrogate the States' immunity from suit.  Rather, the Supreme Court requires that such an intent be "obvious from a 'clear legislative statement.'"  <u>Seminole Tribe of Fla. v. Fla.</u>, 517 U.S. 44, 55 (1996).  "A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment."  <u>Id.</u> at 56.

       Upon examination of the VPPA, there is no "unmistakably clear" statement of an intent to abrogate sufficient to strip UT of its sovereign immunity.  <u>Id.</u>; <u>see also</u> 18 U.S.C. § 2710.  Because Brown can establish neither voluntary consent nor Congressional abrogation, the Court finds that UT is shielded by sovereign immunity and must be dismissed from the instant suit.[3]

---

[3] The Court's holding applies to UT Athletics as well as the University.  Brown does not contest UT's assertion that UT Athletics is an arm of the state for the purposes of sovereign immunity, and this Court finds no error in UT's argument. <u>See</u> <u>Darby v. Pasadena Police Dept.</u>, 939 F.2d 311, 315 (5th Cir. 1991) (finding that a police department was not a separate legal entity from the city).  Particularly instructive to this finding is <u>Canada Hockey, L.L.C. v. Tex. A&M Athletic Dep't</u>, No. 20-20503, 2022 WL 445172, at *3-4 (5th Cir. Feb. 14, 2022), where the Fifth Circuit determined that Texas A&M's athletic department was entitled to sovereign immunity because it qualified as an arm of the state under the framework of <u>Clark v. Tarrant Cty.</u>, 798 F.2d 736 (5th Cir. 1986).  As relevant here, the Fifth Circuit found that (1) Texas law suggests that an athletic department is essentially an "auxiliary enterprise" that is an extension of the state; (2) the athletic department relied wholly on outside funding, as Texas law prohibits public funds to be used for intercollegiate athletic programs; (3) the athletic department is within and governed by the university; (4) education and intercollegiate athletics

III.    Ex Parte Young

Finally, the Court addresses Brown's argument that because the relief he seeks is injunctive in nature, the sovereign immunity exception outlined in Ex Parte Young, 209 U.S. 123 (1908) applies.  Seemingly anticipating this Court's objection to his assertion, Brown alternatively requests leave to amend his Complaint to name the individual responsible for enforcing the contract between UT and the Operator Defendants so that he may raise a claim under Ex Parte Young.  (Dkt. # 27 at 14, n. 12.)

Indeed, Ex Parte Young exceptions to Eleventh Amendment immunity are reserved for suits against state officers in their official capacity so that a federal court "may enjoin state officials to conform their future conduct to the requirements of federal law."  Quern v. Jordan, 440 U.S. 332, 337 (1979).  No such official has been named in this suit.  The Court will grant Brown leave to amend his Complaint to comport with Ex Parte Young, but warns that he must take care to ensure that "the state officer has 'some connection' with the enforcement of the disputed act."  K.P. v. LeBlanc, 627 F.3d 115, 124 (5th Cir. 2010) (quoting Ex Parte Young, 209 U.S. at 157).  Brown should take heed of UT's well-founded

are statewide concerns; (5) the athletic department had never before been named in a lawsuit; and (6) the athletic department's property and funding is managed by the university's Board of Regents.  Id.  The same findings apply to UT Athletics.  (See Dkt. # 21.)

arguments against his request for leave; at this time, however, the Court is unwilling to make a ruling without first affording Brown the opportunity to find the appropriate state official and make specific <u>Ex Parte Young</u> arguments related to that individual.[4]

CONCLUSION

Because UT is shielded from the instant suit by sovereign immunity, the Court **GRANTS** UT's Motion to Dismiss **WITHOUT PREJUDICE**.  (Dkt. # 27.)  Brown has until **Wednesday, August 16, 2023** to file an amended complaint.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, July 26, 2023.

_____
David Alan Ezra
Senior U.S. District Judge

---

[4] Having concluded that <u>Ex Parte Young</u>'s injunctive relief exception does not apply here, the Court will not address Brown's arguments regarding the alleged indemnification clause in the agreements between UT and the Operator Defendants.  Moreover, Brown admits that his contentions are "[f]or the sake of discussion" only – the Court will not entertain speculative arguments without evidence.