**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| ADAM BROWN, on Behalf of Himself and All Others Similarly Situated, | **Case No.: 1:23-cv-00374-DAE** |
| Plaintiff, | |
| v. | |
| LEARFIELD COMMUNICATIONS, LLC, SIDEARM SPORTS, LLC, UNIVERSITY OF TEXAS AT AUSTIN, and THE UNIVERSITY OF TEXAS AT AUSTIN ATHLETICS, | **Hon. David A. Ezra** |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT LEARFIELD COMMUNICATIONS, LLC AND SIDEARM SPORTS, LLC'S 12(b)(1), 12(b)(6), and 12(b)(7) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS......................................................................................................2

ARGUMENT..........................................................................................................................4

I.   THE OPERATOR DEFENDANTS ARE NOT AN ARM OF THE STATE AND ARE
NOT IMMUNE FROM SUIT..............................................................................................4

II.   THE COMPLAINT SHOULD NOT BE DISMISSED FOR FAILURE TO JOIN AN
INDISPENSABLE PARTY ................................................................................................4

III.      PLAINTIFF HAS STATED A CLAIM UNDER THE VPPA.........................................6

A.    Plaintiff is a consumer under the VPPA ....................................................................6

B.    Operator Defendants are VTSPs under the VPPA....................................................10

C.    Operator Defendants knowingly disclosed Plaintiff's PII .......................................13

1.    The information Operator Defendants disclosed is PII. ..........................................14

2.    Operator Defendants knowingly disclosed Plaintiff's information...........................16

IV.      THE VPPA IS CONSTITUTIONAL AND DOES NOT VIOLATE THE FIRST
AMENDMENT AS APPLIED TO THE OPERATOR DEFENDANTS ...............................18

CONCLUSION.....................................................................................................................19

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Adams v. Am.'s Test Kitchen, LP*,
  2023 U.S. Dist. LEXIS 113127 (D. Mass. June 30, 2023) .....................................13

*Adelman v. Peter*,
  2011 U.S. Dist. LEXIS 171704 (S.D. Tex. Sep. 29, 2011) .........................................6

*Ambrose v. Bos. Globe Media Partners LLC*,
  2022 U.S. Dist. LEXIS 168403 (D. Mass. Sept. 19, 2022) ..............................15, 17

*Belozerov v. Gannett Co.*,
  2022 U.S. Dist. LEXIS 229436 (D. Ma. Dec. 20, 2022)...........................7, 15, 17

*Boelter v. Advance Magazine Publrs. Inc.*,
  210 F. Supp. 3d 579 (S.D.N.Y. 2016) ....................................................................18

*Broad. Music, Inc. v. Armstrong*, 2013 U.S. LEXIS 103938 (W.D. Tex. Jul. 24, 2013)................5

*Buechler et al., v. Gannett Company, Inc.*,
  No. 22-1464-CFC, 2023 WL 6389447  (D. Del. Oct. 2, 2023) .............................10

*Cantu v. Tapestry, Inc.*,
  2023 U.S. Dist. LEXIS 118474 (S.D. Cal. Jul. 10, 2023) .....................................12

*Cappello v. Walmart Inc.*,
  2019 U.S. Dist. LEXIS 237326 (N.D. Cal. Apr. 5, 2019) ......................................17

*Carroll, et al., v. General Mills, Inc.*,
  2023 U.S. Dist. LEXIS 110049 (C.D. Cal 2023)....................................................11

*Carter v. Scripps Networks, LLC*,
  2023 U.S. Dist. LEXIS 71150 (S.D.N.Y. Apr. 24, 2023)..........................................8

*Clark v. Tarrant Cnty.*,
  798 F.2d 736 (5th Cir. 1986) ....................................................................................4

*Czarnionka v. Epoch Times Ass'n Inc.*,
  2022 U.S. Dist. LEXIS 226328 (S.D.N.Y. Dec. 15, 2022)....................................15

*Czarnionka v. Epoch Times Ass'n*,
  2022 U.S. Dist. LEXIS 209067 (S.D.N.Y. Nov. 17, 2022)..............................15, 17

*Dahlstrom v. Sun-Times Media, LLC*,
    777 F.3d 937 (7th Cir. 2015)................................................................18

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) .............................................................14

*Enslin v. Coca-Cola Co.*,
    136 F. Supp. 3d 654 (E.D. Pa. 2015) ................................................16

*Feldman v. Star Trib. Media Co. LLC*,
    2023 U.S. Dist. LEXIS 37416 (D. Minn. Mar. 7, 2023)...........14, 15, 17

*Gardener v. MeTV*,
    2023 U.S. Dist. LEXIS 115810 (N.D. Ill. July 6, 2023).........................9

*Goldstein v. Fandango Media, LLC*,
    2023 U.S. Dist. LEXIS 71415 (S.D. Fl. 2023)....................................12

*Goldstein v. Fandango Media, LLC*,
    2023 U.S. LEXIS 71415 (S.D. Fla. Mar. 7, 2023) ...............................14

*Harris v. Pub. Broad. Serv.*,
    2023 U.S. Dist. LEXIS 45888 (N.D. Ga. Mar. 20, 2023)..............7, 13, 17

*Hersh v. United States*,
    553 F.3d 743 (5th Cir. 2008) .............................................................18

*Hunthausen v. Spine Media, LLC*,
    2023 U.S. Dist. LEXIS 116325 (S.D. Cal. June 21, 2023).....................9

*In re Hulu Priv. Litig.*,
    2014 U.S. Dist. LEXIS 59479 (N.D. Cal. Apr. 28, 2014) ....................15

*In re Hulu Priv. Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) ...............................................16

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016) ..............................................................14

*Jackson v. Fandom, Inc.*,
    2023 U.S. Dist. LEXIS 125531 (N.D. Cal. July 20, 2023).....................13

*Jefferson v. Healthline Media, Inc.,*
    2023 U.S. Dist. LEXIS 91174 (N.D. Cal. May 24, 2023) .......................9

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit,*
  507 U.S. 163 (1993) ...............................................................................................6

*Lebakken v. WEBMD, LLC,*
  2022 U.S. Dist. LEXIS 201010 (N.D. Ga. Nov. 4, 2022).................................passim

*Lee v. Anthony Lawrence Collection, L.L.C.,*
  47 F.4th 262 (5th Cir. 2022) ..................................................................................6

*Munn v. Illinois,*
  94 U.S. 113 (1876) ................................................................................................18

*Nat'l Endowment for the Arts v. Finley,*
  524 U.S. 569 (1998) ..............................................................................................18

*Rajet Aeroservicios S.A. de C.V. v. Castillo Cervantes,*
  801 F.App'x 239 (5th Cir. 2020) ............................................................................5

*Robinson v. Disney Online,*
  152 F. Supp. 3d 176 (S.D.N.Y. 2015) ...................................................................14

*Salazar v. National Basketball Ass'n.,*
  2023 U.S. Dist. LEXIS 137982 (S.D.N.Y. Aug. 7, 2023) ........................................8

*Salazar v. Paramount Glob.,*
  2023 U.S. Dist. LEXIS 123413 (M.D. Tenn. July 18, 2023).....................................9

*Senne v. Vill. of Palatine,*
  695 F.3d 597 (7th Cir. 2012) .................................................................................16

*Stark v. Patreon, Inc.,*
  2022 U.S. Dist. LEXIS 187602 (N.D. Cal. Oct. 13, 2022).................................15, 17

*Stark v. Patreon, Inc.,*
  2023 U.S. Dist. LEXIS 27481 (N.D. Cal. Feb. 17, 2023) .......................................17

*State Farm Lloyds v. Four Wives,*
  2023 U.S. Dist. LEXIS 51571 (S.D. Tex. Feb. 24, 2023)..........................................5

*Stoudemire et al., v. Lee Enterprises, Inc.*
  Case No. 3:22-cv-00086 (S.D. Iowa July 20, 2023) ...........................................9, 12

*U.S. v. Rutherford Oil Corp.,*
  2009 U.S. Dist. LEXIS 40233 (S.D. Tex. May 13, 2009) .........................................5

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016)..................................................................................7

*Zapata v. Hays Cty. Junvenile Det. Ctr. & Brett Littlejohn*,
    2022 U.S. Dist. LEXIS 89178 (W.D. Tex. May 18, 2022) .......................................5

**Statutes**

18 U.S.C. § 2710(a)(1) ........................................................................................6

18 U.S.C. § 2710(a)(3) ....................................................................................8, 10

**Other Authorities**

S. Rep. No. 100-599.....................................................................................1, 8, 17

## INTRODUCTION

Learfield Communications, LLC and Sidearm Sports, LLC (collectively, the "Operator Defendants") operate hundreds of websites for schools and universities (the "Athletic Websites"), including the Texas Longhorns Website ("Team Website" or "Longhorns Website").[1] The operation of the Team and Athletic Websites includes, as a major component, video content, video hosting, and overall video provider services. Further substantiating the significant portion of their overall business in video content and service providing, the Operator Defendants forged partnerships with digital broadcast titans, *i.e.*, CBS, to strengthen its video offerings and generate increased advertising revenue from subscribers visiting the site to watch videos.[2]

Operator Defendants invite visitors on the Team Website to subscribe to emailed newsletters. The visitors provide their personally identifiable information ("PII") information in exchange for scheduled email newsletters, which highlight content from the Team Website and redirect subscribers to the Team Website's videos and articles. This relationship confirms that subscribers to the Team Website are "consumers" under the VPPA.

Operator Defendants implemented the Pixel on the Team Website which caused information that identifies subscribers' requested specific video materials from the Team Website to be shared with a third party. The VPPA allows for these otherwise protected disclosures only where subscribers provide informed and written consent. Operator Defendants chose not to seek requisite VPPA consent, or any form of consent for that matter.

---

[1] Unless otherwise defined, capitalized terms are defined in Plaintiff's Complaint (hereafter, "¶").
[2] *See CBS Interactive Advanced Media and Learfield's Sidearm Sports to Partner in College Sports*, LEARFIELD https://www.learfield.com/2018/02/cbs-interactive-advanced-media-learfields-sidearm-sports-partner-college-sports/ (last accessed September 26, 2023).

Aside from its VPPA-related arguments, Operator Defendants claim that (i) the VPPA is overbroad as to commercial speech; (ii) the VPPA is vague; (iii) the VPPA is unconstitutional; (iv) they are immune from suit as a government entity's ostensible sub-contractor; and (v) Plaintiff failed to join an indispensable party. Each of these arguments, or efforts to avoid facing responsibility for the discretionary actions the Operator Defendants themselves took, fail.

## STATEMENT OF FACTS

Congress passed the VPPA to prohibit video providers from engaging in the knowing disclosure of PII concerning consumers of those providers. ¶ 24. Congress believed that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems [was] a new, more subtle and pervasive form of surveillance." ¶ 25 (quoting S. Rep. No. 100-599 at 7-8 (1988)); *see* Exhibit 1 to the Unsworn Declaration of Patrick Yarborough ("Yarborough Decl.").

The Operator Defendants host and manage the operation of collegiate and high school athletic websites and mobile platforms (¶ 32), including 300 Division 1 Sports teams. ¶ 34. The Operator Defendants host and deliver video content to subscribers, including "pre-recorded content," which was facilitated through partnerships with content providers, such as CBS. ¶ 38. The Operator Defendants provide support to end users, retain the data and video used to provide content to the websites, and own the "website's traffic" from the team websites. *See* ¶¶ 43–51. They control teams' access to their own athletic websites, ownership of the IP used in creating the team websites, and advertising rights and control on the team websites. ¶ 52.

The Complaint alleges the overt steps that the Operator Defendants needed to take to put the Facebook Pixel (the "Pixel") on the team websites, including signing up for a "business manager" account (¶ 69); creating the "Pixels" (¶ 70); naming them (¶ 70); specifying which user

data to collect (¶ 73); and placing the Pixels' code on each webpage they intended to track. ¶¶ 72–76, 92.  The Operator Defendants' tracking efforts did not end with the Pixel placement.  They used webpage naming practices,[3] including naming webpages to use video titles or descriptions (collectively, the "Video Watching Data") embedded within the webpages.  *See* ¶ 84.  This is different from the Operator Defendants' previously used webpage naming schemes, which anonymized video data.  The multi-step process for gaining access to and placing the Pixel – as well as the decision to use video titles in webpage names – were knowingly taken by Operator Defendants here. The Pixel employed on the Longhorns Website disclosed subscribers' unique and unencrypted Facebook ID Number (FID or UID) to Facebook – in the same transmission as the Video Watching Data. Because the Operator Defendants failed to censor their Pixels'[4] HTTP Requests, an ordinary person[5] can easily find the real owner of the FID with this URL formulation: "http://www.facebook.com/[FID here]".  ¶ 77.

Plaintiff and Class Members were required to provide certain personal information in order to receive e-newsletters that contain articles and links to videos.  *See* ¶ 99.  Plaintiff-subscriber watched videos on the website, and the Operator Defendants shared his FID and Video Watching Data with Facebook (¶ 15) without seeking or obtaining consent from their subscribers, in violation of the VPPA. *See* ¶¶ 96–99; ¶¶ 101–05.

---

[3] *The Playbook: New URL Structure*, SIDEARM SPORTS https://playbook.sidearmsports.com/features/new-url-structure/ (last visited October 4, 2023).
[4] *See Meta for Developers: Advanced Matching,* FACEBOOK https://developers.facebook.com/docs/meta-pixel/advanced/advanced-matching (last visited October 3, 2023).
[5] Plaintiffs detail how the Operator Defendants captured, collected, stored and shared subscribers' PII, and provided detailed imagery of the coding evincing that process.  ¶¶ 83–92. Operator Defendants suggest that this is the coding that an "ordinary person" would need to be able to read and understand in order for there to be VPPA violation.  But the manner in which an ordinary person is provided the PII and web watching history is alleged in Plaintiffs' Complaint. ¶ 77, 133.

## ARGUMENT

### I. THE OPERATOR DEFENDANTS ARE NOT AN ARM OF THE STATE AND ARE NOT IMMUNE FROM SUIT

The Operator Defendants are not an arm of the State of Texas and are therefore not immunized by the Eleventh Amendment. Government contractors are not blanketly immune as if they were a state. *Clark v. Tarrant Cnty.*, 798 F.2d 736, 744–45 (5th Cir. 1986). The first factor considered in *Clark* favors Plaintiff in that Operator Defendants cannot cite to any Texas law or regulation that considers them to be an arm of the state. *Id.* (Factor One: "whether the state statutes and case law view the agency as an arm of the state"). Next, they are not controlled or funded by the State; in fact, they have full operational control of the team websites. *Id.* (weighing "the source of the entity's funding" and "the entity's degree of local autonomy").[6]

Plaintiff alleges that Operator Defendants are the ones who built and operated the websites in violation of the VPPA. Operator Defendants have full operational control over the websites, presenting pre-recorded video on the websites, advertising on the websites to generate their own revenue. They use their own code to track users, including the Pixel, and failed to give notice of their tracking practices, in violation of the VPPA. *See* ¶¶ 52–63. Operator Defendants could have operated the websites legally, but they did not. The Operator Defendants are not immune.

### II. THE COMPLAINT SHOULD NOT BE DISMISSED FOR FAILURE TO JOIN AN INDISPENSABLE PARTY

The University of Texas at Austin and The University of Texas at Austin Athletics (collectively, the "UT Entities") were not indispensable parties under Federal Rule of Civil

---

[6] *See also Longhorn Foundation FAQs,* UNIVERSITY OF TEXAS AT AUSTIN ATHLETICS, https://texassports.com/sports/2023/4/7/FAQs.aspx (last visited October 4, 2023) ("[UT] Athletics is entirely self-supporting, meaning that all private donations directly benefit the needs of student-athletes, coaches, and staff. There is no state funding allocated to the Athletics Department.").

Procedure 19(a)(1).[7] The Operator Defendants have the burden of showing that the UT Entities are indispensable to this action or must be joined. *U.S. v. Rutherford Oil Corp.*, 2009 U.S. Dist. LEXIS 40233, *8 (S.D. Tex. May 13, 2009).

*First*, the Court can accord complete relief from the Operator Defendants because, as set forth in Sections I and III(C)(2), Operator Defendants control, own, and operate the websites at their own discretion in designing the websites and implementing the tracking methods, *see* Fed. R. Civ. P. 19(a)(1)(A), and thus are independently subject to the VPPA as the parties who can cause the VPPA violations to stop. This is not a situation where only "hollow" relief can be granted in UT Entities' absence.[8] Even if a third party could also be liable, the Court can still award full relief against Operator Defendants. *Id*. at *6. *Second*, Operator Defendants have not identified any risks to themselves of inconsistent obligations, and there are none. *See Broad. Music, Inc. v. Armstrong*, 2013 U.S. LEXIS 103938, *19-21 (W.D. Tex. Jul. 24, 2013).[9]

Under Rule 19(b), this case can proceed in the absence of the UT Entities. Any prejudice of a judgment entered in the UT Entities' absence is mitigated because Operator Defendants' interests are aligned with the UT Entities; the Operator Defendants are vigorously defending the VPPA claims; and they are either solely responsible or have shared responsibility. *See Adelman v.*

---

[7] The Court previously dismissed Plaintiff's claims against the UT Entities (Dkt. 37).

[8] *See State Farm Lloyds v. Four Wives*, 2023 U.S. Dist. LEXIS 51571, *13 (S.D. Tex. Feb. 24, 2023) (noting "complete relief" refers to relief among the parties, not between a party and an absent party); *Rutherford Oil Corp.*, 2009 U.S. Dist. LEXIS 40233, at *6 (in making this determination, the court does not consider "the effect on absent parties.").

[9] Moreover, the UT Entities were not necessary parties because they failed to claim an interest in this action. Indeed, they successfully moved to be dismissed from this action, disclaiming any interest. (Dkt. 37); *see Rajet Aeroservicios S.A. de C.V. v. Castillo Cervantes*, 801 F.App'x 239, 246-47 (5th Cir. 2020) (reversing dismissal for failure to join required parties where no non-party had claimed any interest relating to the subject of the action); *Zapata v. Hays Cty. Junvenile Det. Ctr. & Brett Littlejohn*, 2022 U.S. Dist. LEXIS 89178, at *20 (W.D. Tex. May 18, 2022) (Pitman, Mag. J.).

*Peter*, 2011 U.S. Dist. LEXIS 171704, at *7 (S.D. Tex. Sep. 29, 2011). In addition, monetary relief can be sought and obtained only against the Operator Defendants and the Court can grant adequate relief in the UT Entities' absence. Finally, if the Operator Defendants are immune from suit and this case cannot proceed without them, class members would be deprived of any form of relief. *Id*. at 1326 (reversing dismissal, noting that lack of alternative recourse weighs against dismissal).

Operator Defendants' reliance on *Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 268 (5th Cir. 2022) is misplaced. *See* Motion to Dismiss (Dkt. 39) (hereafter, "MTD") at 4-5. There, the court found that a trademark dispute over a university's alma mater could not proceed without the university's participation. The court's decision to dismiss principally because the defendant, as the university's licensing agent, did not share the same interests in ownership over the university's intellectual property, and that the better forum for this dispute was the USPTO. *Id*. at 269-70. This case involves misuse of the Plaintiff's PII, not Defendants' IP; and, unlike in *Lee*, Plaintiff and Class Members have no recourse beyond this action.

## III. PLAINTIFF HAS STATED A CLAIM UNDER THE VPPA

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in plaintiff's favor and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

### A. Plaintiff is a consumer under the VPPA

Plaintiff has alleged facts establishing that he is a consumer under the VPPA, which the Act defines as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Plaintiff alleged that he provided personal information – *i.e.*, first and last name, email address, and zip code – to Operator Defendants in exchange for an

exclusive, scheduled newsletter. ¶¶ 3, 99. These allegations satisfy the "consumer" element of the VPPA because the commitment between Operator Defendants to supply periodic newsletters in exchange for Plaintiff's personal information is all that the VPPA requires. *See Harris v. Pub. Broad. Serv.*, 2023 U.S. Dist. LEXIS 45888, *5-11 (N.D. Ga. Mar. 20, 2023) (finding that plaintiff was a consumer under same circumstances as here); *Lebakken v. WEBMD, LLC*, 2022 U.S. Dist. LEXIS 201010, *7-10 (N.D. Ga. Nov. 4, 2022) (same); *Belozerov v. Gannett Co.*, 2022 U.S. Dist. LEXIS 229436, *7 (D. Ma. Dec. 20, 2022) (same); *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487–89 (1st Cir. 2016) (finding same, and that payment that is not necessary).

Operator Defendants assert that Plaintiff is not a consumer under the VPPA for two reasons. *First*, Operator Defendants cursorily argue they are not liable to Plaintiff who did not subscribe to their services. MTD at 7. Their argument fails because, as Plaintiff alleges, Operator Defendants are the owners and operators of the website at issue, and as such, *they* solicited Plaintiff's personal information in exchange for the newsletter subscription, and Plaintiff subscribed his personal information to Operator Defendants' vast database. *See* ¶¶ 43–49; 68.[10] What is more, the Operator Defendants implemented the steps leading to the VPPA violation (*i.e.*, web watching, employing the Pixel, use of non-anonymized website naming). As such, on a motion to dismiss, taking Plaintiff's allegations as true, Operator Defendants cannot dispute their control of the team websites, or that Plaintiff subscribed his personal information to Operator Defendants.

*Second*, Operator Defendants contend that Plaintiff is not a consumer because his subscription was for a newsletter rather than for a video product. MTD at 7-8. Operator Defendants' argument stems from a New York District Court decision, *Carter v. Scripps Networks,*

---

[10] Based on the investigation underpinning the Complaint, the newsletters for subscribers to the team websites, including the Longhorn website, contain a privacy link that – rather than lead to the university's terms – links to the Operator Defendants' policies page.

7

*LLC*, 2023 U.S. Dist. LEXIS 71150 (S.D.N.Y. Apr. 24, 2023) and a limited number of cases that followed. However, the rationale in *Carter* is unpersuasive because it fails to interpret the statute liberally and disregards precedent, going beyond the plain meaning of the text where no ambiguity exists in the statutory language.

The VPPA unambiguously defines "consumer" to mean "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). The VPPA does not define or otherwise restrict the meaning of "consumer" to a person who subscribes to goods or services constituting "audio visual materials," as the court in *Carter* held. *See Carter*, 2023 U.S. Dist. LEXIS 71150 at *15-16. Instead, "the phrase 'goods or services' is generally construed broadly to encompass 'all parts of the economic output of society.'" *Lebakken v. WEBMD, LLC,* 2022 U.S. Dist. LEXIS 201010, at *8 (N.D. Ga. Nov. 4, 2022). In doing so, *Carter* misinterpreted the statute, and the *Carter* court's concern that applying the VPPA to retail purchases or third-party affiliate links[11] does not apply here. As alleged, the video content offered to Longhorn Website newsletter subscribers *is* a part of the business of the Operator Defendants.

In a footnote, Operator Defendants also cite *Salazar v. National Basketball Ass'n*., 2023 U.S. Dist. LEXIS 137982, at *21-28 (S.D.N.Y. Aug. 7, 2023) ("*NBA*"), another nonprecedential and distinguishable case. MTD at 8 n.8. Relying on *Carter,* the *NBA* court found that a subscription to newsletters did not suffice for a consumer relationship because consumers must rent, purchase, or subscribe to the *audio-visual materials* themselves, "not just any products or services from a video tape services provider." *Id.* at *23. *NBA* and *Carter* require VPPA plaintiffs to allege that subscribers had a sufficient relationship with defendants that stemmed *directly* from consuming

---

[11] "Plaintiffs' interpretation, taken to its logical end, likely would entitle a visitor who purchases a 'Tulip Tile Trinket Box' using an hgtv.com affiliate link to video-streaming privacy protections not extended to otherwise-similar site visitors." *Carter*, 2023 U.S. Dist. LEXIS 71150, at *14.

video materials. This is not the law in other circuits, which merely require a showing of an ongoing commitment or relationship with defendant. *See, e.g., Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 488-89 (1st Cir. 2016) (agreeing to the statutory construction, but disagreeing on factual analysis); *Harris,* 2023 U.S. Dist. LEXIS 45888, at *7-9; *Lebakken,* 2022 U.S. Dist. LEXIS 201010. In other words, the courts in *NBA* and *Carter* read a *nonexistent* condition into the language of the VPPA by requiring plaintiffs to plead that the newsletter subscriptions allowed the plaintiff to access videos that members of the public would not otherwise have access to. This is not, and has never been, a requirement under the VPPA. *See, e.g.*, *Stoudemire et al., v. Lee Enterprises, Inc.* Case No. 3:22-cv-00086 (S.D. Iowa July 20, 2023) (decision attached to the Yarborough Declaration as Exhibit 2) (notwithstanding that newsletters contained access to articles and videos, and that the newsletter subscriptions were not directly tied solely to video services or content, the court sustained plaintiffs' complaint.).

The other cases Operator Defendants cite in support of its argument that Plaintiff is not a consumer are distinguishable. *See, e.g., Gardener v. MeTV*, 2023 U.S. Dist. LEXIS 115810, at *9 (N.D. Ill. July 6, 2023) (plaintiffs did not allege a link between the newsletters and video content, or between the newsletter and the website, and received no special access); *Hunthausen v. Spine Media, LLC*, 2023 U.S. Dist. LEXIS 116325, at *8-9 (S.D. Cal. June 21, 2023) (holding that purchases from third-party advertisers, not defendants, did not qualify plaintiffs as consumers); *Jefferson v. Healthline Media, Inc.,* 2023 U.S. Dist. LEXIS 91174 (N.D. Cal. May 24, 2023) (noting that it could not "discern or infer from the complaint whether Jefferson receives any kind of publication, let alone any good or service, in exchange for signing up for Healthline's email list" and that plaintiff provided "no information" about the email list she subscribed to); *Salazar v. Paramount Glob.*, 2023 U.S. Dist. LEXIS 123413, at *27-28 (M.D. Tenn. July 18, 2023) (holding

that plaintiff was not a subscriber where plaintiff had only alleged a subscription to newsletters, not that he had accessed any video materials).

Plaintiff here has alleged that he provided personal contact information to the Operator Defendants in exchange for receiving periodic emails and newsletters. ¶ 3 ("Subscribers are given email updates regarding the Team and content on the Team Website in exchange for their contact information"). The newsletter email updates included links to the Longhorns Website. *Id.* Plaintiff alleged that he watched pre-recorded video content on the Longhorns Website. *Id.* ¶ 15. As a result, Plaintiff is a "consumer" under the VPPA.

### B.    Operator Defendants are VTSPs under the VPPA

Operator Defendants are VTSPs[12] because they delivered pre-recorded videos to subscribers, developed the infrastructure (including video availability and the underlying coding), and video delivery is neither passive nor peripheral to its business.[13] Indeed, Operator Defendants tout that "[s]treaming is [their] single most opted in product for [their] partners." ¶ 37.

Operator Defendants "standardize, host, and control the video hosting services." ¶ 58. Operator Defendants "draft[] code and provid[e] a digital space for videos to reside," MTD at 10, and also contract with video streaming platforms such as CBS Interactive Advanced Media to host and deliver the content to subscribers. ¶¶ 38, 58–60. Watching videos on the Longhorns Website

---

[12] The VPPA defines Video Tape Service Providers ("VTSP") as those who "engage[] in the business, in or affecting interstate or foreign commerce, of rental, sale or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ."  18 U.S.C. § 2710(a)(4).

[13] *Buechler et al., v. Gannett Company, Inc.*, No. 22-1464-CFC, 2023 WL 6389447, at *2 (D. Del. Oct. 2, 2023) (mem. op.) (slip copy) ("A prerecorded video on a website is an audio-visual medium that a jury could reasonably find to be similar to a prerecorded video cassette tape. The Complaint alleges that [Defendant] delivers such videos to its subscribers via the internet. The Complaint therefore plausibly implies that [Defendant] is a video tape service provider as defined by the [VPPA].").

involves the Operator Defendants requesting video data from storage when requested by subscribers, then "delivering" that pre-recorded video to a subscriber's browser.[14]

Operator Defendants tailored their delivery of video content to subscribers. Operator Defendants have streaming services that deliver audio visual material. They downplay their involvement saying they are "[s]imply drafting code[.]" MTD at 10. This "code" represents the media player and the fetching and delivery of video material, just like Netflix or YouTube. The Operator Defendants unquestionably fit the definition of VTSP.

Operator Defendants rely on *Carroll, et al., v. General Mills, Inc.,* 2023 U.S. Dist. LEXIS 110049 (C.D. Cal 2023), to support their position that they are not VTSPs. MTD at 9-10. In *General Mills,* the court considered whether General Mills was a VTSP under the VPPA. *General Mills*, 2023 U.S. Dist. LEXIS 110049, at *8-10. General Mills argued that they were not a VTSP as their "income comes from making and selling food, not videos" and that "the General Mills websites . . . provide no indication whatever that General Mills is anything other than a consumer goods company selling food products." *Id.* at *9-10. The Court noted that nothing in plaintiff's FAC contradicted this characterization. *Id.* at *10 ("Plaintiffs allege that they are consumers of General Mills because '[b]oth Plaintiffs have purchased and eaten Defendant's products before.'")). In dismissing the complaint with leave to amend, the court noted that:

> Even by Plaintiffs' characterization, the websites are maintained for the brands; they are not the key component of the brands. The videos on the website are part of Defendant's brand awareness, but they are not Defendant's particular field of endeavor. Nothing suggests that Defendant's business is centered, tailored, or focused around providing and delivering audiovisual content.

*Id*. at *11. Here, the Operator Defendants' business may not be exclusively video content related,

---

[14]*See* ¶ 59, figure 4, which depicts the Operator Defendant's media player obtaining video from www.youtube.com/0b0ed8d1-d324-427f-99b5-eeaa661ad5a3 and delivering it to the subscriber's device through the Longhorns Website.

but there is no question that a significant portion of their business model is centered, tailored, or focused on video services and providing the Longhorns Website's subscribers with video content. ¶¶ 35, 42, 58-63, 125).  Far more than breakfast cereal.[15]

In *Goldstein v. Fandango Media, LLC*, 2023 U.S. Dist. LEXIS 71415, at *10 (S.D. Fl. 2023), the court sustained VPPA claims despite apparent uncertainty as to the nature of defendant's business involvement in renting, selling or delivery audiovisual materials. *Goldstein*, 2023 U.S. Dist. LEXIS 71415, at *10. The Court in *Goldstein* reasoned that "the Court must [first] determine the nature of Defendant's business," explaining that this determination involved analyzing "how much business Defendant devotes to each of" it's business goals. *Id.* at 10; s*ee also Stoudemire*, Case No. 3:22-cv-00086 at 7 (finding that defendant advertising and local news media company was a VTSP for purposes of analyzing a VPPA claim); (*Czarnionka v. Epoch Times Ass'n,* 2022 U.S. Dist. LEXIS 209067, *12 (S.D.N.Y. Nov. 17, 2022) (holding that plaintiff adequately alleged that newspaper and media company was engaged in the business of delivering prerecorded audio-visual materials); *Lebakken*, 2022 U.S. Dist. LEXIS 201010, at *8 n.2 (holding that plaintiff adequately alleged that WebMD is a video tape service provider because she alleged that WebMD is engaged in the business of delivering prerecorded audio-visual materials to consumers via its e-newsletter and its website); *Ambrose v. Boston Globe Media Partners LLC*, 2022 U.S. Dist. LEXIS 168403, *6 (D. Mass. Sept. 19, 2022) (concluding plaintiff plausibly alleged The Boston Globe is a "video tape service provider"); *Jackson v. Fandom, Inc.*, 2023 U.S. Dist. LEXIS 125531, *7-8

---

[15] The same analysis applies to Operator Defendants' reliance on *Cantu v. Tapestry, Inc.*, 2023 U.S. Dist. LEXIS 118474 (S.D. Cal. Jul. 10, 2023). MTD at 10. There, the defendant was a luxury fashion holding company and the court found that there were no allegations to suggest that the company "significantly tailored" their business to video delivery. 2023 U.S. Dist. LEXIS 118474 at *25.

(N.D. Cal. July 20, 2023) (finding that the court can reasonably infer that defendant's website is tailored to deliver video content to viewers.).

Operator Defendants promoted their video streaming services. In fact, Operator Defendants advertised their streaming platform as one of the main attractions of its business. ¶ 37. Operator Defendants specifically contract with universities, including with UT Entities, to provide the infrastructure and video hosting for the Athletic Websites. ¶ 41. Accordingly, a significant portion of Operator Defendants business is to maintain the Team Website and its wide array of video content offerings. Clearly the audio-visual materials provided by Operator Defendants are much more than mere "brand awareness" or ancillary to its business. Operator Defendants do not sell tangible goods: they instead rely on clients like the UT Entities to contract for their services, and advertising revenue connected to the videos and other content it makes available on the various websites they operate. In accordance with *Goldstein,* the Court should find that Plaintiff has alleged sufficient facts to show that Operator Defendants are VTSPs based on the nature of their business.[16]

### C. Operator Defendants knowingly disclosed Plaintiff's PII

The court should summarily reject Operator Defendants' contention that they did not knowingly disclose Plaintiff's PII because every court to have considered the "knowingly" question as it pertains to the Pixel has sustained the pleading. *See, e.g., Adams v. Am.'s Test Kitchen, LP*, 2023 U.S. Dist. LEXIS 113127, at *19–21 (D. Mass. June 30, 2023); *Harris v. Pub. Broad. Serv.*, 2023 U.S. Dist. LEXIS 45888, at *9 (N.D. Ga. Mar. 20, 2023); *Feldman v. Star Trib. Media*

---

[16] At a minimum, that determination will require developing a factual record to determine how much of Operator Defendants' business is devoted to each of its business goals.

*Co. LLC*, 2023 U.S. Dist. LEXIS 37416, at *24-32, (D. Minn. Mar. 7, 2023); *Goldstein v. Fandango Media, LLC*, 2023 U.S. LEXIS 71415, at *10–11 (S.D. Fla. Mar. 7, 2023).

### 1. The information Operator Defendants disclosed is PII

Operator Defendants disclosed Plaintiff's PII, which is "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The Ninth Circuit described "PII" as "information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (citation omitted). While the Ninth Circuit concluded that a device serial number was not PII because it identified "a sizable 'pool' of possible viewers," it recognized that a "Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual." *Id.* at 986.

Operator Defendants sent information that includes the website users' Facebook User ID number ("UID") (¶ 91) and title of the video being watched or the URL of the video (¶¶ 84, 88) to Facebook. Importantly, "[a] Facebook UID can be used, by anyone, to easily identify a Facebook user. Any person, even without in-depth technical expertise, can utilize the UID […] by simply appending the Facebook UID to www.facebook.com (e.g., www.facebook.com/[UID_here]), […] which] will direct the browser to the profile page, and all information contained in or associated with the profile page, for the [Facebook UID]." ¶ 77. As such, Plaintiff has sufficiently disclosed that the information constitutes PII.

Relying primarily on *Robinson v. Disney Online*, 152 F. Supp. 3d 176 (S.D.N.Y. 2015) and *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016), Operator Defendants argue that the information they disclosed is merely a "static digital identifier" that does not identify who a person is. MTD 11-13. However, "[t]he statute does not require a name.… One can be identified

14

in many ways: by a picture, by pointing, by an employee number, by the station or office or cubicle where one works, by telling someone what 'that person' rented." *In re Hulu Priv. Litig.*, 2014 U.S. Dist. LEXIS 59479, at *35–38 (N.D. Cal. Apr. 28, 2014).

In *Hulu*, the court found that "[t]he Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user." *Id.* at *46. *See also Stark v. Patreon, Inc.*, 2022 U.S. Dist. LEXIS 187602, at *24–26 (N.D. Cal. Oct. 13, 2022) (holding UID was "PII"); *Feldman*, at *29 (information disclosed via Meta pixel "is both reasonably comprehensible and plausibly as usable as the GPS data addressed in *Yershov*); *Czarnionka v. Epoch Times Ass'n*, 2022 U.S. Dist. LEXIS 209067, at *7 (S.D.N.Y. Nov. 17, 2022) ("[t]he [UID] itself represents a particular individual"); *Belozerov*, at *9 (same); *Lebakken*, at *10–12 (same); *Ambrose v. Bos. Globe Media Partners LLC*, 2022 U.S. Dist. LEXIS 168403, at *4–6 (D. Mass. Sept. 19, 2022) (same).

Operator Defendants' reliance on *Robinson* and *Nickelodeon* is misplaced because those courts concluded merely that device serial numbers and information requiring additional details from other sources are not PII. *See Feldman*, 2023 U.S. Dist. LEXIS 37416, at *25 (noting that *Nickelodeon* dealt with disclosure of an IP address, browser, operating systems setting, and computing device's device identifier, but UID's are different and constitute PII). Those circumstances are distinguishable from those at issue here because "[t]he [UID] . . . is sufficient for an ordinary person to identify Plaintiff and similarly situated individuals by simply typing 'facebook.com/[Facebook ID]' into a web browser. In this way, the [FID] is clearly distinguishable from information found not to qualify as PII by courts adopting the 'ordinary person' standard[.]" *Czarnionka v. Epoch Times Ass'n Inc*, 2022 U.S. Dist. LEXIS 226328, at *3 (S.D.N.Y. Dec. 15, 2022) .

## 2. Operator Defendants knowingly disclosed Plaintiff's information

Operator Defendants' assertion that they did not disclose Plaintiff's information because Plaintiff's browser did (MTD at 14–15) is belied by Plaintiff's allegations and VPPA authority. Plaintiff alleged facts establishing Operator Defendants' knowing disclosure of his viewing information to Facebook. *See, e.g.*, ¶¶ 9, 30, 91–92. A defendant discloses PII knowingly when it possesses "consciousness of transmitting the private information." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). It does not matter whether the defendant possesses "knowledge of illegality or potential consequences," *see Senne v. Vill. of Palatine*, 695 F.3d 597, 603 (7th Cir. 2012), nor does it matter whether "third parties actually see the disclosed information … to constitute a violation." *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 670 (E.D. Pa. 2015).

Plaintiff alleges that Operator Defendants – not Facebook, and not Plaintiff himself – intentionally and knowingly installed the Pixel on the Longhorns Website. ¶ 9, 69–75. Operator Defendants used the tracking tools they embedded in their websites to automatically transmit Plaintiff's viewing information to Facebook. ¶¶ 78–92. The tracking methods that Operator Defendants installed on their websites require no further action on the part of the Defendants, Facebook, or any other third-party. ¶ 91. Operator Defendants do not (and cannot) deny that they intentionally decided to collect and share Plaintiff's PII through their knowing decision to obtain these tracking methods and implement them into the Longhorn Website. These factual allegations underpin the fundamental allegation that "Defendants knowingly and systematically disclosed Plaintiff's personal viewing information to Facebook." ¶ 30.

Operator Defendants cannot shirk liability by claiming that it was Plaintiff's browser that disclosed the cookies and FIDs to Facebook because it was *Operator Defendants* that intentionally configured their websites to automatically force Plaintiff's browsers to disclose this information.

Had they not installed the tracking devices on the websites, the websites would not (and could not) have automatically transmitted the viewing information to Facebook. *See Feldman*, at *15–21.

Nor does it matter whether Plaintiff previously gave Facebook consent to collect "such information" (MTD at 15) because assuming, *arguendo,* that policies exist and that Plaintiff was aware of them,[17] Facebook's policies do not somehow provide Plaintiff with knowledge of what viewing information from which website may be tracked and conveyed to Facebook, nor does it constitute informed, written consent – as required by the VPPA – *for the Operator Defendants* to share Plaintiff's viewing information.

Courts have consistently held that knowing disclosure is adequately alleged where, as here, a defendant consciously implements the Facebook Pixel tracking tool into its website, which then automatically transmits users' viewing information to Facebook. *See, e.g.*, *Czarnionka*, 2022 U.S. Dist. LEXIS 209067, at *10–11 (sufficiently alleged knowing disclosure in violation of VPPA when defendant "programmed the Facebook Pixel into its website code, knowing that Facebook would receive video titles and subscriber's FID when a subscriber watched a video."); *Feldman*, 2023 U.S. Dist. LEXIS 37416, at *29–32 (same); *Belozerov*, 2022 U.S. Dist. LEXIS 229436, at *11–12 (same); *Lebakken*, 2022 U.S. Dist. LEXIS 201010, at *12–14 (same).[18] Operator Defendants' argument that they do not "knowingly" disclose Plaintiff's personal information because they purportedly did not know whether Plaintiff had an FID, or whether Plaintiff's viewing

---

[17] As an initial matter, the Court must reject Operator Defendants' argument because it has offered no evidence whatsoever that Plaintiff ever saw or agreed to the proffered Facebook policy.

[18] Additionally, while not explicitly discussing the VPPA's "knowing" disclosure element, numerous other courts have recently sustained VPPA claims where a defendant implemented the Facebook Pixel code into its website to automatically disclose users' viewing information to Facebook. *See e.g.*, *Harris*, 2023 U.S. Dist. LEXIS 45888; *Stark*, 2022 U.S. Dist. LEXIS 187602; *Ambrose*, 2022 U.S. Dist. LEXIS 168403; *Cappello v. Walmart Inc.*, 2019 U.S. Dist. LEXIS 237326 (N.D. Cal. Apr. 5, 2019); *Stark v. Patreon, Inc.*, 2023 U.S. Dist. LEXIS 27481 (N.D. Cal. Feb. 17, 2023).

information would be successfully transmitted to Facebook (MTD at 16) fails because, as set forth *supra*, Operator Defendants intentionally configured the their websites to gather users' FID and disclose them to Facebook. That some users may not have an FID is irrelevant.

## IV. THE VPPA IS CONSTITUTIONAL AND DOES NOT VIOLATE THE FIRST AMENDMENT AS APPLIED TO THE OPERATOR DEFENDANTS

Operator Defendants have the burden of demonstrating "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections [...] before a statute will be struck down as facially overbroad." *Hersh v. United* States, 553 F.3d 743, 762 (5th Cir. 2008).[19] Operator Defendants have failed to meet their burden and cannot facially invalidate the VPPA. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (facial invalidation is "strong medicine" that should be employed "sparingly and only as a last resort"). The VPPA regulates commercial speech, and furthers government interest in protecting consumers' privacy. This Court should follow the body of case law upholding the constitutionality of state laws modeled on the VPPA as well as other statutes that limit the dissemination of the private information of citizens.[20]

On September 20, 2023, the United States of America filed a Notice of Intervention and intervened in this case for the limited purpose of defending the constitutionality of the VPPA. *See* Dkt. 42. Rather than restating the same arguments in opposition to Operator Defendants'

---

[19] In the context of constitutional challenges, "[e]very statute is presumed to be constitutional." *Munn v. Illinois*, 94 U.S. 113, 123 (1876).

[20] *See, e.g.*, *Boelter v. Advance Magazine Publrs. Inc.*, 210 F. Supp. 3d 579, 602 (S.D.N.Y. 2016) (upholding PPPA, finding it regulated only commercial speech); *Boehner v. McDermott*, 484 F.3d 573, 578 n.2 (D.C. Cir. 2007) (citing the VPPA for the principle that "government can also limit disclosures by persons who are not its employees without running afoul of the First Amendment . . . those who sell or rent video tapes or DVDs ordinarily may not reveal 'personally identifiable information concerning' their customers."); *see also Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937 (7th Cir. 2015) (upholding analogous Driver's Privacy Protection Act against a First Amendment challenge).

attack on the constitutionality of the VPPA, Plaintiff moved to join and incorporate by reference the arguments set forth in the United States of America's Memorandum of Law in Defense of the Constitutionality of the Video Privacy Protection Act (Dkt. 42-1). *See* Dkt. 43.

## CONCLUSION

For the foregoing reasons, the Operator Defendants' Motion to Dismiss should be denied. Should the Court grant the Motion in any part, Plaintiff respectfully requests leave to amend.

Dated: October 4, 2023

Respectfully submitted,

**FOSTER YARBOROUGH PLLC**

By: */s/ Patrick Yarborough*
Patrick Yarborough
Marshal J. Hoda *(pro hac vice)*
Jeffrey Lucas Ott
917 Franklin Street, Suite 220
Houston, TX 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202
Email: patrick@fosteryarborough.com
Email: marshal@fosteryarborough.com
Email: luke@fosteryarborough.com

**LEVI & KORSINSKY, LLP**

By: */s/ Mark S. Reich*
Mark S. Reich (*pro hac vice*)
Courtney E. Maccarone*
Gary S. Ishimoto*
33 Whitehall St., 17th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cmaccarone@zlk.com
Email: gishimoto@zlk.com

*pro hac vice* forthcoming

*Attorneys for Plaintiff Adam Brown*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed on October 4, 2023, with the Clerk of Court using the CM/ECF system, which will automatically send email notifications of such filing to all attorneys of record in this case.

*/s/ Patrick Yarborough*
PATRICK YARBOROUGH