# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

ADAM BROWN, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

LEARFIELD COMMUNICATIONS, LLC, SIDEARM SPORTS, LLC, UNIVERSITY OF TEXAS AT AUSTIN, and THE UNIVERSITY OF TEXAS AT AUSTIN ATHLETICS,

    Defendants.

Case No. 1:23-cv-00374-DAE

Hon. David A. Ezra

## DEFENDANT LEARFIELD COMMUNICATIONS, LLC AND SIDEARM SPORTS, LLC'S REPLY IN SUPPORT OF THEIR 12(b)(1), 12(b)(6), and 12(b)(7) MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

                                                                                                    **Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

      I.      LEARFIELD IS IMMUNE FROM SUIT AS A GOVERNMENT CONTRACTOR. ...........................................................................................1

      II.     THE UT ENTITIES ARE INDISPENSABLE PARTIES. ......................................1

      III.    PLAINTIFF FAILS TO STATE A CLAIM. ............................................................2

              a.      Plaintiff Does Not Allege He Is A "Consumer" Protected By The VPPA. ........................................................................................................2

              b.      Plaintiff Does Not—And Cannot—Allege Learfield Is A "VTSP." ...........3

              c.      Plaintiff Does Not Allege Learfield Knowingly Disclosed PII. ..................4

                      i.       Plaintiff Fails To Allege That Learfield Discloses PII. ...................4

                              1.       The Information Allegedly Transmitted Is Not PII. ............4

                              2.       Even If The Transmissions Were PII, Plaintiff Alleges That His Own Browser Disclosed The Information, Not Learfield. ......................................................................5

                      ii.      Plaintiff Fails To Allege That Learfield Knowingly Disclosed PII. ..................................................................................................7

      IV.    THE VPPA IS UNCONSTITUTIONAL...................................................................7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Belozerov v. Gannett Co.*,
  646 F. Supp. 3d 310 (D. Mass. 2022) ....................................................................................6

*Carroll v. General Mills, Inc.*,
  No.CV231746DSFMRWx, 2023 WL 4361093 (C.D. Ca. Jun. 26, 2023) ...............................4

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm. of New York*,
  447 U.S. 557 (1980) ...............................................................................................................7

*Czarnionka v. Epoch Times Ass'n, Inc.*,
  No. 22 CIV. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ............................6

*Ellis v. Cartoon Network, Inc.*,
  803 F.3d 1251 (11th Cir. 2015) ..............................................................................................3

*Enslin v. Coca-Cola Co.*,
  136 F. Supp. 3d 654 (E.D. Pa. 2015) ......................................................................................6

*Feldman v. Star Trib. Media Co. LLC*,
  No. 22-CV-1731, 2023 WL 2388381 (D. Minn. Mar. 7, 2023) ..............................................6

*Ghanaat v. Numerade Labs, Inc.*,
  No. 23-CV-00833, 2023 WL 5738391 (N.D. Cal. Aug. 28, 2023) .........................................5

*In re Hulu Priv. Litig.*,
  86 F. Supp. 3d 1090 (N.D. Cal. 2015) ....................................................................................6

*Lebakken v. WebMD, LLC*,
  640 F. Supp. 3d 1335 (N.D. Ga. 2022) ...................................................................................6

*Markels v. AARP*,
  No. 4:22-cv-5499-YGR, 2023 WL 6411720 (N.D. Cal., Aug. 29, 2023) ...............................3

*Perry v. Cable News Network, Inc.*,
  854 F.3d 1336 (11th Cir. 2017) ..............................................................................................3

*Salazar v. Maimon*,
  750 F.3d 514 (5th Cir. 2014) ..................................................................................................6

*Senne v. Vill. Of Palatine*,
  695 F.3d 597 (7th Cir. 2012) ..................................................................................................6

*Solomon v. Flipps Media, Inc.*,
    No. 22CV5508JMAJMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) ..............................5

*Stark v. Patreon, Inc.*,
    2023 WL 2090979 (N.D. Cal. Feb. 17, 2023) ........................................................................10

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................................................................................3

**Statutes**

15 U.S.C. § 2613(c)(1)(B)(ii) ................................................................................................6

18 U.S.C. § 2710(a)(3) ...........................................................................................................7

18 U.S.C. § 2710(a)(4) ...........................................................................................................4

18 U.S.C. § 2710(b)(1) .......................................................................................................6, 7

18 U.S.C. § 2721 ....................................................................................................................6

42 U.S.C. § 9604(e)(7)(E)(ii) ................................................................................................6

42 U.S.C. § 11042(b)(2) ........................................................................................................6

Mich. Comp. Laws. 445.1711(a) ...........................................................................................9

Mich. Comp. Laws 445.1712(1) ............................................................................................9

Mich. Comp. Laws 445.1713(a) ............................................................................................9

**Rules**

Fed. R. Civ. P. 19(a) ..............................................................................................................2

Fed. R. Civ. P. 19(b) ..............................................................................................................2

## INTRODUCTION

Another court recently granted Learfield Communications, LLC and Sidearm Sports, LLC's (collectively, "Learfield") motion to dismiss a VPPA case filed by the same Plaintiff's counsel that filed this case, based on a complaint containing similarly deficient allegations as this case. *Edwards v. Learfield Communications, LLC*, No. 1:23-cv-65 (N.D. Fla.), ECF No. 47 (attached as **Exhibit 1**). Dismissal is likewise warranted here.

## ARGUMENT

### I. LEARFIELD IS IMMUNE FROM SUIT AS A GOVERNMENT CONTRACTOR.

This Court already ruled the University of Texas at Austin and the University of Texas at Austin Athletics ("the UT Entities") are immune. (Dkt. 37.) Plaintiff's opposition notably does not dispute that the Complaint alleges Learfield and the UT Entities acted in concert to collectively commit a singular violation of the VPPA. (*See* Compl. ¶¶ 9, 11, 68, 125, 132-133.) In fact, Plaintiff's prior briefing emphasized the interconnectedness of his claims against the UT Entities and Learfield. (Doc. 27.) And Plaintiff does not address any of the case law cited in Learfield's opening brief in support of Learfield's argument that this alone entitles Learfield to immunity to the same extent as the UT Entities. (*See* Doc. 39 at 3 (collecting cases).)

### II. THE UT ENTITIES ARE INDISPENSABLE PARTIES.

Plaintiff expressly argued in his earlier briefing that "the UT Defendants' involvement in this litigation is meaningful, at minimum, for the injunctive relief sought here" and "their inclusion would afford Plaintiff and the putative class members prospective relief that would otherwise not be available to them." (Doc. 27 at 11-13.) He now makes an about-face and vaguely asserts that "the Court can accord complete relief from" Learfield. (Doc. 44 at 5.) But this argument makes no sense in light of the fact that this case concerns *the UT Entities'* website. In short, Plaintiff previously *expressly admitted* that complete relief (in the form of an injunction) is not available

without the UT Entities, and the fact that the entire action concerns the *UT Entities'* website demonstrates that the UT Entities have an interest in this case that could be impaired in their absence—and Learfield could be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations if the Court were to order Learfield to follow one course of action with respect to the website and the UT Entities, as the party that contracted with Learfield in relation to the website, were to direct Learfield to do something different. Either of these circumstances alone would meet the requirements of Fed. R. Civ. P. 19(a). Moreover, Plaintiff does not (and cannot) dispute that joinder of the UT Entities is impossible in light of the fact that they have been dismissed as immune, satisfying Fed. R. Civ. P. 19(b).

### III. PLAINTIFF FAILS TO STATE A CLAIM.

#### a. **Plaintiff Does Not Allege He Is A "Consumer" Protected By The VPPA.**

Plaintiff does not allege that he rented, purchased, or subscribed to anything at all *from Learfield* and consequently is not a "consumer" of Learfield. Plaintiff asserts in his opposition that Learfield "solicited Plaintiff's personal information in exchange for the newsletter subscription" (Doc. 44 at 7), but the allegations Plaintiff cites in support of this assertion all discuss Learfield's purported relationship to *the website*, not to any email newsletter Plaintiff allegedly receives. (Compl. ¶¶ 43-49, 68.) To the contrary, the Complaint expressly alleges Plaintiff "subscribed to *Texas Longhorns' newsletters*," *the Longhorns* "offer guests of the site the option to sign-up for a team newsletter," and "*[t]he Longhorns* benefits [sic] from the value created through its use of free e-newsletters." (Compl. ¶¶ 15, 19, 93 (emphasis added).)

In any event, since the time Learfield filed its opening brief, another court dismissed VPPA claims asserted against Learfield in a case raising similarly deficient factual allegations brought by this same Plaintiff's counsel, on the basis that signing up for an email newsletter does not make a person a "consumer" under the VPPA. *Edwards*, slip op. at 14 ("Plaintiffs' signing up for email

2

updates here did not make them 'subscribers.' Signing up requires no 'durable' commitment or real exchange at all…Signing up does not grant access to any exclusive or restricted content, much less any exclusive video content."). In doing so, *Edwards* held that such factual allegations did not meet the standard for a "consumer" articulated by the Eleventh Circuit in *Perry v. Cable News Network, Inc.,* 854 F.3d 1336, 1342-43 (11th Cir. 2017) and *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015). *Edwards*, slip. op. at 13-15. This Court should decline Plaintiff's invitation to reject this well-reasoned body of case law in favor of a minority position that does not require the alleged subscription to be related to audio visual content, and instead should follow the continually growing[1] body of cases consistent with *Edwards*.

### b. **Plaintiff Does Not—And Cannot—Allege Learfield Is A "VTSP."**

Plaintiff effectively agrees with Learfield's characterization of the Complaint as alleging that Learfield drafts code to support the UT Entities' ability to provide videos on UT Entities' own website and host the videos on the website. (Doc. 44 at 10-11.) Plaintiff then proceeds to argue that Learfield is "just like Netflix and YouTube" based on these allegations. (Doc. 44 at 11.)

Not so. Significantly, Plaintiff does not dispute that in order to fall within the definition of a "video tape service provider") ("VTSP"), a defendant's business "must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose," such that delivering video content is "a focus of the defendant's work." *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221-22 (C.D. Cal. 2017). The Complaint describes Learfield Communications, LLC as "a collegiate sports marketing company" and Sidearm Sports, LLC as a company that "manages websites and mobile platforms, as well as

---

[1] *See also Markels v. AARP*, No. 4:22-cv-5499-YGR, 2023 WL 6411720, at *3 (N.D. Cal., Aug. 29, 2023) (dismissing VPPA claim for failure to allege plaintiffs were consumers where "plaintiffs do not allege that they needed to provide their information or payment to access AARP's videos. Rather, the videos are readily available to anyone who visits the site.").

3

provide the hosting and infrastructure, for colleges and high schools." (Compl. ¶¶ 16-17.) In other words, by Plaintiff's own allegations, the focus of Learfield Communications' business is sports marketing, and the focus of Sidearm's business is designing the infrastructure and hosting for websites and mobile platforms—*not renting, selling, or delivering video content* in and of itself.

Moreover, Plaintiff does *not* allege (nor could he) that the website contains exclusively video content—or even that the primary content on the website is videos. While the website may contain videos (among other content), this is essentially akin to the situation in *Carroll v. General Mills, Inc.*, No.CV231746DSFMRWx, 2023 WL 4361093 at *3-4 (C.D. Ca. Jun. 26, 2023), where videos included on a website may have been part of the defendant's "marketing strategy" or "brand awareness, but they are not Defendant's particular field of endeavor." To the extent any of the non-binding district court cases Plaintiff cites could be read to support Plaintiff's argument that merely including videos on a website, among other content, is sufficient to render a business a VTSP, these cases are inconsistent with the statutory language that limits VTSPs to entities "engaged in the business" of delivering video content. *See* 18 U.S.C. § 2710(a)(4).

    c. **Plaintiff Does Not Allege Learfield Knowingly Disclosed PII.**

        i. *Plaintiff Fails To Allege That Learfield Discloses PII.*

            1. **The Information Allegedly Transmitted Is Not PII.**

Plaintiff concedes the appropriate standard for determining whether information is PII under the VPPA is whether the information "would readily permit an ordinary person to identify a specific individual's video-watching behavior." (Doc. 44 at 14 (internal quotation marks omitted).) Yet Plaintiff fails to even address the opening argument that Learfield made in its brief: the transmissions of complex computer code described in the Complaint, on their face, do not meet this standard. As another court recently held in dismissing VPPA claims against Learfield, "[a]lthough Plaintiffs do allege that the [school] Website transmits metadata, which contains

4

c_user IDs and 'may' contain video titles, [citation omitted], they offer no facts explaining how Facebook accesses that metadata, why doing so does not require technical expertise, or how much metadata Facebook has to comb through to discover someone's c_user ID and the video titles." *See Edwards*, slip op. at 18. None of the non-binding cases that Plaintiff cites in his opposition even addressed this critical threshold issue.

Because the transmission of complex computer code alleged in the complaint does meet the threshold requirement of constituting information that "would readily permit an ordinary person to identify a specific individual's video-watching behavior," there is no need to proceed further with the analysis. But even if Plaintiff could overcome this threshold issue (and to be clear, he cannot), he has not plausibly alleged that any c_user information allegedly transmitted could be used by anyone to discern *his* identity and the videos *he* has viewed. As *Edwards* explained:

> At best, [Plaintiffs] plausibly allege that *sometimes* Facebook can use a UID to identify a particular person. They do not allege that Facebook ever used, or even can use, *their* UIDs to identify *them* or *their* video-watching habits. The complaint does not even allege that each Plaintiff was signed into his or her own Facebook account when visiting the [school] Website; it says only that each Plaintiff "us[ed] a device that was signed into Facebook." [citation omitted]
>
> Even assuming Plaintiffs were signed into their own Facebook accounts, the complaint "contains no allegation as to what information was actually included on [their] profile[s]," such as their names or birthdays. *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 92 (S.D.N.Y. 2022). It offers only threadbare recitals that [Plaintiffs'] "profile[s] included personally identifiable information." … That "formulaic recitation of the element[]" is not enough.

*Edwards*, slip. op. at 17-18.[2]

### 2. Even If The Transmissions Were PII, Plaintiff Alleges That His Own Browser Disclosed The Information, Not Learfield.

---

[2] *See also Ghanaat v. Numerade Labs, Inc.*, No. 23-CV-00833, 2023 WL 5738391, at *4 (N.D. Cal. Aug. 28, 2023) ("plaintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses"); *Solomon v. Flipps Media, Inc.*, No. 22CV5508JMAJMW, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023) (same).

5

Plaintiff tacitly admits that the Facebook ID ("FID") is something stored on his own computer and transmitted directly from his own computer to Facebook. (Doc. 44 at 16-17.) The VPPA applies only to an entity that "discloses" PII, 18 U.S.C. § 2710(b)(1), and Learfield cannot possibly "disclose" something that it never possesses in the first place.

Plaintiff urges the Court to adopt a lower standard and allow his VPPA claim to proceed on the basis that the website allegedly *caused* Plaintiff's browser to transmit the FID to Facebook. But if Congress had intended for acts broader than "disclose" to be covered by the statute, Congress could have included broader terms—such as "otherwise make available"—as Congress has repeatedly done in other statutes.[3] Without any indication in the statutory text that Congress meant more than "disclose," this Court must take the plain meaning of disclose and find that Learfield itself did not disclose PII.[4] *See Salazar v. Maimon*, 750 F.3d 514, 518 (5th Cir. 2014) ("The appropriate starting point when interpreting any statute is its plain meaning.").

---

[3] *See, e.g.*, 18 U.S.C. § 2721 ("A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose *or otherwise make available* to any person or entity: (1) personal information….") (emphasis added); 15 U.S.C. § 2613(c)(1)(B)(ii) (requiring determination "that the information is not required to be disclosed *or otherwise made available* to the public…" (emphasis added); 42 U.S.C. § 11042(b)(2) (requiring showing that "information is not required to be disclosed, *or otherwise made available*, to the public…") (emphasis added); 42 U.S.C. § 9604(e)(7)(E)(ii) (requiring showing that "information is not required to be disclosed, *or otherwise made available*, to the public…").

[4] Moreover, none of the non-binding cases Plaintiff cites warrant expanding the statute beyond its plain language. Two of Plaintiff's cited cases did not even involve the VPPA. *See Senne v. Vill. Of Palatine*, 695 F.3d 597, 603 (7th Cir. 2012); *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 670 (E.D. Pa. 2015). In another case, the court entered summary judgment in favor of the *defendant* on the basis that the defendant did not knowingly disclose PII. *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). The remaining cases either did not address the issue of the plaintiff's own browser disclosing the information, or are otherwise distinguishable because the defendants had sought to introduce evidentiary material outside the complaint—whereas here, Learfield has relied exclusively on Plaintiff's own factual allegations and judicially noticeable dictionary definitions and case law. *See Feldman v. Star Trib. Media Co. LLC*, No. 22-CV-1731 (ECT/TNL), 2023 WL 2388381, at *9–10 (D. Minn. Mar. 7, 2023) (no discussion of information being transmitted by plaintiff's own browser); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1341–43 (N.D. Ga. 2022) (same); *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) (explaining that defendant's arguments attempted to contradict facts in complaint and rely on materials outside complaint); *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 313–15 (D. Mass. 2022) (declining to consider argument that was based on factual material outside the complaint).

## ii. *Plaintiff Fails To Allege That Learfield Knowingly Disclosed PII.*

Plaintiff does not dispute that Learfield had no way to know whether he, or any other user, had an FID, much less what those FIDs were, or whether Plaintiff set his browser to allow Facebook cookies. (*See generally* Doc. 44 at 16-18.) Instead, he asks the Court to find he sufficiently pled the "knowing" element simply because Learfield "knowingly installed the Pixel on the Longhorns Website." (Doc. 44 at 16.) But the VPPA only applies to an entity that "knowingly discloses…personally identifiable information concerning any consumer…" 18 U.S.C. § 2710(b)(1). PII, in turn, is defined as "information which identifies a person as having requested or obtained specific video materials or services…" 18 U.S.C. § 2710(a)(3). These statutory requirements cannot possibly be met when it is *undisputed* that Learfield does *not* know whether Plaintiff's (or any other user's) FID is ever transmitted—and the FID is the only information that Plaintiff is asking the Court to construe as constituting PII.

## IV. THE VPPA IS UNCONSTITUTIONAL.

### a. The VPPA Does Not Withstand Intermediate Scrutiny.

Plaintiff makes no independent argument concerning constitutionality and instead refers to the government's brief. As the U.S. concedes, to survive First Amendment scrutiny, a restriction on commercial speech must meet three conditions: (1) the government must have a "substantial interest in regulating the speech," (2) the regulation must "directly and materially advance[] that interest," and (3) the regulation must be "no more extensive than necessary to serve the interest." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm. of New York*, 447 U.S. 557, 566 (1980). The U.S. cannot demonstrate the VPPA meets *any* of these requirements—much less all three.

### i. *No Substantial Interest In Regulating This Particular Speech.*

The U.S. argues that "the governmental interest underlying the VPPA is 'substantial'" because "protecting consumer privacy is a substantial governmental interest.'" (Doc. 42-1 at 10.) Yet, the U.S. conflates the protection of privacy generally with a specific right to privacy in the

types of videos individuals watch. The U.S. argues *Brown's* holding is inapplicable because in *Brown* the speech at issue was unprotected (Doc. 42-1 at 10-11). However, *Brown* is still a guiding principle when considering what speech is and is not allowed. And, here, where the "general right to privacy" could be taken and applied to numerous scenarios, it is important to question whether the general right to privacy has a "long tradition of proscription" against sharing video viewing information. If there is not a long tradition of proscription, then how is it clear what information is and is not protected by the general right to privacy? The U.S. has not identified *any* such evidence of a long tradition of proscription of the disclosure of video viewing information, and has provided *no* examples of cases involving a concern over persons' video viewing history prior to the passage of the VPPA. This history does not demonstrate a "long tradition of proscription" sufficient to meet intermediate scrutiny's standard of a "substantial interest."

> ii. The VPPA Does Not "Directly and Materially Advance" The Purported Governmental Interest.

The U.S. argues "the VPPA 'directly advances' the government's interest in protecting the privacy of individuals' video viewing choices" because "the VPPA applies to individuals who sell, rent, or deliver video recordings—the individuals, other than the consumer, likely to have access to the information the statute seeks to keep private." (Doc. 42-1 at 11.) However, what entities the VPPA applies to is not the only consideration in determining whether the VPPA "directly and materially advances" the government interest. Rather, as the U.S. concedes, "the government must 'demonstrate that the harms it recites are real and *that its restriction will in fact alleviate them to a material degree.*'" (Doc. 42-1 at 11.) The U.S. fails to address Learfield's authority that explains that "[t]here must be a 'fit between the legislature's ends and the means chosen to accomplish those ends" because "[t]hese standards ensure … that the State's interests are *proportional* to the resulting burdens placed on speech …." (Doc. 39 at 19.) There is nothing proportional about the onerous notice and consent requirements in the VPPA to the need to protect video viewing information. Indeed, far more information than what video a person viewed on a public website is disclosed about consumers by companies where consumers have agreed to broad-reaching privacy

8

policies. And the government's heavy reliance on *Hearst I*, *Advance Magazine Publishers*, and *Hearst II*—which all address a Michigan statute that serves the same purported interest as the VPPA but which imposes materially different restrictions—only serves to underscore the VPPA is not appropriately tailored.[5]

### iii. The VPPA Is Not Narrowly Drawn.

The U.S. implicitly concedes that less-restrictive consent requirements could also advance the VPPA's objectives, yet contends the VPPA is sufficiently narrowly drawn because its "disclosure prohibitions are targeted at the commercial entities most likely to have, and thus, be able to make public, the information Congress intended to protect." (Doc. 42-1 at 12-13.) However, if the VPPA is interpreted in the manner Plaintiff advocates, then it is so vague and overbroad that it is *not* targeted at only those entities most likely to possess the information Congress intended to protect. Because the VPPA leaves the terms "business" and "delivery" undefined, Plaintiff's interpretation of the statutory term "video tape service provider" would make the VPPA effectively apply to *any* person or entity that provides even a *single video* to others that purchase, rent, or subscribe to those videos—or as plaintiffs argue, to any other goods or services offered by the entity. For example, if interpreted as Plaintiffs advocate, the VPPA may apply to Tik Tok users who upload 10-second videos for their subscribers; restaurant websites with videos of their food offerings; school websites that contain videos about their curriculum; and retail store websites that contain videos displaying how an outfit may look. The list goes on, virtually endlessly.[6]

---

[5] The Michigan statue only requires "written permission of the customer," which is very different than the VPPA's onerous consent requirements. *See* Mich. Comp. Laws 445.1713(a). It explicitly defines "customer" as "an individual who purchases, rents, or borrows a book, other written material, a sound recording or a video recording." Mich. Comp. Laws. 445.1711(a). And unlike the VPPA that vaguely references "delivery," the Michigan statute's disclosure restrictions apply to "a person . . . engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings." Mich. Comp. Laws 445.1712(1). To the extent the Court rejects Learfield's arguments concerning the appropriate scope of "consumer" and "VTSP" under the VPPA, the Michigan statute would be considerably clearer and narrower than the VPPA.

[6] This is not mere speculation. Learfield already pointed out that the vague terms in the VPPA have resulted in an explosion of litigation, primarily against companies whose businesses look nothing like the brick and mortar "video-tape service provider" Congress intended to regulate. (Doc. 39 at 16.)

9

### b. The VPPA Is Unconstitutionally Vague And Overbroad.

The U.S. argues that an overbreadth analysis does not apply to commercial speech. (Doc. 42-1 at 6-7.) However, Learfield has explained that if the VPPA is interpreted as Plaintiffs are advocating, it encapsulates *any entity that has a video on its website*—which extends to non-commercial applications. Moreover, "[t]here are two situations in which a facial overbreadth challenge can succeed: (1) when a party establishes that there is 'no set of circumstances under which [the statute] would be valid or that the statute lacks any plainly legitimate sweep;' and (2) where 'a substantial number of [the statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Stark v. Patreon, Inc.*, 2023 WL 2090979, at *6 (N.D. Cal. Feb. 17, 2023). Here, there *are* a substantial number of unconstitutional applications, judged in relation to any purported legitimate sweep, because Plaintiffs are attempting to apply the VPPA to entities and circumstance wholly different than those in existence when the VPPA was passed.

Moreover, that plaintiffs are attempting to apply the VPPA to these vastly different entities and circumstances demonstrates it is unconstitutionally vague and does not give reasonable notice of what is proscribed. The U.S. does *not* argue Congress contemplated the VPPA applying to entities like Learfield or computer code transmissions like those alleged in the Complaint—and if it is interpreted as extending to such entities and circumstances, it is unconstitutionally vague.

## II. THE VPPA IS UNCONSTITUIONAL AS APPLIED TO LEARFIELD.

The U.S. does not meaningfully respond to the heart of the issue: the VPPA does not pass constitutional muster if it is interpreted to apply in the manner Plaintiff advocates in this case—to entities wholly unlike any "video tape service provider" that existed at the time the VPPA was passed; individuals that have not rented, purchased, or subscribed to any audio visual content; and transmissions of complex computer code that, on their face, do not identify any person's viewing history. If the VPPA is interpreted in this manner, it is unconstitutionally vague, overbroad, and not appropriately tailored to advancing any purported government interest.

Dated: November 1, 2023            Respectfully submitted,

*/s/Rachel Palmer Hooper*
Rachel Palmer Hooper
Texas Bar No. 24039102
**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, TX 770002
Telephone: 713.751-1600
Facsimile:  713-751-1717
rhooper@bakerlaw.com

Bonnie Keane DelGobbo (*pro hac vice*)
Illinois Bar No. 6309394
**BAKER & HOSTETLER LLP**
1 North Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: 312-416-8185
Facsimile: 312-416-6201
bdelgobbo@bakerlaw.com

*Attorneys for Defendants Learfield Communications, LLC and Sidearm Sports, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was electronically filed on November 1, 2023 with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/Rachel Palmer Hooper*
