UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ADAM BROWN, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No. 1:23-cv-00374-DAE |
| v. | Hon. David A. Ezra |
| LEARFIELD COMMUNICATIONS, LLC, SIDEARM SPORTS, LLC, UNIVERSITY OF TEXAS AT AUSTIN, and THE UNIVERSITY OF TEXAS AT AUSTIN ATHLETICS, | |
| Defendants. | |

**DEFENDANT LEARFIELD COMMUNICATIONS, LLC AND SIDEARM SPORTS, LLC'S SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR RULE 12(b)(1), 12(b)(6), and 12(b)(7) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to the Court's request at oral argument, Learfield Communications, LLC and Sidearm Sports, LLC (collectively, "Learfield") respectfully submit this supplemental brief addressing the three issues on which the Court requested supplemental briefing.

**I.      SAUNDERS V. HEARST TELEVISION, INC.**

As Learfield explained at oral argument, *Saunders v. Hearst Television, Inc.*, No. 23-cv-10998-RGS, 2024 WL 126186 (D. Mass. Jan. 11, 2024), was decided by a district court within in the First Circuit that was bound to follow *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016). *Yershov* expresses a minority view adopting a more expansive interpretation of the terms "subscriber" and "personally identifiable information" ("PII"). *See Yershov*, 820 F.3d at 486 (holding that "PII is not limited to information that explicitly names a person" and that a "GPS and device identifier" constituted PII where it was "readily foreseeable"

that the recipient of the information could link that information "to a certain person by name, address, phone number, and more"); *id*. at 487-89 (holding that person need not pay money to be deemed a "subscriber" and "that the transaction described in the complaint—whereby Yershov used the mobile device application that Gannett provided to him, which gave Gannett the GPS location of Yershov's mobile device at the time he viewed a video, his device identifier, and the titles of the videos he viewed in return for access to Gannett's video content—plausibly pleads a case that the VPPA's prohibition on disclosure applies"). With respect to PII, "[t]he Third and Ninth Circuits have adopted a narrower test, asking whether the information at issue 'would readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Edwards v. Learfield Communications, LLC*, No. 1:23-cv-65-AW-MAF, 2023 WL 8544765, at *7 (citing *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 276 (3d Cir. 2016); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017)). As Learfield noted in its reply brief, Plaintiff concedes that the narrower, majority test is the correct one. (*See* Doc. 46 at 4.) Additionally, with respect to "consumer," the Eleventh Circuit has rejected the idea that downloading a free app which can be deleted without consequence is sufficient to make a person a subscriber. *See Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015). Learfield respectfully submits that *Yershov*'s broader approach is an erroneous interpretation of the statutory text.

In any event, *Hearst Television* is readily distinguishable on its facts. The defendant in Hearst Television "owns various apps on which users can read and watch local and national news, sports, weather, traffic, politics, and entertainment stories," and the plaintiffs "watched videos of weather updates on two local news apps owned by Hearst." *Hearst Television*, 2024 WL at 126186, at *1. Plaintiffs alleged that: "Each time a user watches a video on one of Hearst's apps, Hearst discloses to Braze [a third party application programing interface] the user's email address and

location at the time she watched the video, as well as a unique video ID associated with each video the user watched and data showing that the video was watched. Similarly, in addition to the user's AAID, Hearst discloses to Google a user's geolocation, the title and ID of each video she watched, and data showing that the video was watched." *Id.* at *2.

      None of those allegations are present in this case. While the *Hearst Television* defendant made video content *from its television stations* available to the plaintiffs *through its app* that the plaintiffs downloaded, Plaintiff does *not* allege that Learfield has television stations, or that Plaintiff viewed any videos embedded within his free email newsletters. The focus of a television station's business is materially different than Plaintiff's own description of the Learfield Defendants' respective businesses: "a collegiate sports marketing company" and a company that "manages website and mobile platforms, as well as provide the hosting and infrastructure, for colleges and high schools." (Compl. ¶¶ 16-17.) Moreover, Plaintiff alleges that he signed up for a free email newsletter which included links to the Longhorns' publicly available website, and that he separately watched publicly available videos *on the Longhorns' website*. (Compl. ¶¶ 3, 5.) Thus, unlike in *Hearst Television*, Plaintiff in this case has not alleged that he "subscribed" to anything *through which he accessed videos*. Additionally, while the *Hearst Television* court found it significant that the defendant allegedly disclosed "geolocation data" that "divulged the precise locations of plaintiffs when they viewed videos on Hearst's apps" as well as "unique user IDs…and, in some cases, their email addresses," *Hearst Television*, 2024 WL 126186, at *3, the information allegedly disclosed in this case is only a Facebook ID number—far less than the data in *Hearst Television*. Thus, although Learfield believes that *Hearst Television* applied an erroneous legal framework that is inconsistent with the Third, Ninth, and Eleventh Circuit's approaches to the terms "consumer" and "PII," Plaintiffs in this case have not alleged enough to state a claim

even under the more lenient standards applied in *Hearst Television*.

## II.    LI V. GEORGES MEDIA GROUP LLC.

The plaintiff in *Li v. Georges Media Group LLC*, No. 23-1117, 2023 WL 7280519, at *3 (E.D.La. Nov. 3, 2023) alleged "that she is a paid subscriber of Defendant's website, nola.com, which grants her exclusive access to content behind a paywall, including prerecorded video content." The court held that "[b]ecause Richard contends that she pays Defendant for nola.com access including video content and Defendant is able to access her personal data, Richard has sufficiently plead that she is a subscriber and thus a consumer under the VPPA." *Id.* None of these allegations are present in this case. Plaintiff does not allege that he paid for anything, much less that he paid for exclusive access to prerecorded video content—and *Li* is easily distinguishable for those reasons.[1]

## III.   THE LEARFIELD DEFENDANTS ARE NOT ENGAGED IN THE BUSINESS OF DELIVERING PRERECORDED VIDEO CASSETTE TAPES OR SIMILAR AUDIO VISUAL MATERIALS.

The Learfield Defendants' earlier briefing extensively discussed the fact that they are not "video tape service providers" because the focus of their respective businesses is not the "rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" under 18 U.S.C. § 2710(a)(4). (*See* Doc. 39 at 8-10; Doc. 46 at 3-4.[2]) As discussed during oral argument, the statutory term "delivery" requires the purposeful direction of videos from the defendant to a *specific* consumer, and Plaintiff's allegations that he watched videos on a publicly accessible website which are equally available to any member of the public does not constitute "delivery" of

---

[1] *Li* did not address any of the arguments that Learfield has made concerning the "knowingly" element of a VPPA claim. *See generally Li*, 2023 WL 7280519, at *4. Additionally, *Li* applied *Yershov*'s loose standard for determining whether a Facebook ID constitutes PII and did not discuss the arguments that Learfield has made in its briefing on the PII issue. *See id.*

[2] Yet another case has been issued since briefing on Learfield's motion to dismiss closed which supports the arguments Learfield has made concerning the "video tape service provider" and "consumer" elements. *See Hernandez v. Chewy, Inc.*, No. 2:23-cv-05620 HDV RAO, 2023 WL 9319236, at *3-4 (C.D. Cal. Dec. 13, 2023).

4860-5386-0255.2

videos. The use of "rental, sale, or delivery" in the definition of "video tape service provider" parallels the use of "renter, purchaser, or subscriber" in the definition of "consumer." *Compare* 18 U.S.C. § 2710(a)(4), *with* 18 U.S.C. § 2710(a)(1). Taken together, these definitions demonstrate that the statute covers a business which "delivers" videos to "subscribers" of those videos. Moreover, the dictionary defines "deliver" as "to take and hand over to or leave *for another*" or "to send, provide, or make accessible *to someone* electronically" such as "deliver an email/text message" or "have the information delivered *to you* via email, cell phone, pager, or just on a Web page *that you set up*." *See* "deliver" df. 2a, 2c, https://www.merriam-webster.com/dictionary/deliver (emphasis added). For example, the Post Office "delivers" the mail because they bring it to a specific person or business to which it is addressed, and the bank electronically "delivers" a person's monthly statement by making it available within an online account specific to the accountholder. If the Post Office simply left a pile of mail sitting in a public street for any member of the public to come and take what they wanted, or if the bank posted the monthly statement on a publicly accessible website for any member of the public to view, we would not say that either had been "delivered." The same is true of videos on a publicly accessible website that are equally available to any member of the public. Even if the focus of Learfield's business were posting such videos (and it is not, even by Plaintiff's own allegations), doing so would not constitute "delivery" under the statute because the videos are not purposefully directed to a specific consumer who subscribed to them.

Dated: January 23, 2034                    Respectfully submitted,

                                                                   */s/Rachel Palmer Hooper*
                                                                   Rachel Palmer Hooper
                                                                   Texas Bar No. 24039102
                                                                   **BAKER & HOSTETLER LLP**
                                                                   811 Main Street, Suite 1100
                                                                   Houston, TX 770002
                                                                   Telephone: 713.751-1600
                                                                   Facsimile:  713-751-1717
                                                                   rhooper@bakerlaw.com

        Bonnie Keane DelGobbo (*pro hac vice*)
        Illinois Bar No. 6309394
        **BAKER & HOSTETLER LLP**
        1 North Wacker Drive, Suite 4500
        Chicago, IL 60606
        Telephone: 312-416-8185
        Facsimile: 312-416-6201
        bdelgobbo@bakerlaw.com

        *Attorneys for Defendants Learfield*
        *Communications, LLC and Sidearm Sports, LLC*

6

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was electronically filed on January 23, 2024 with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

<u>/s/Rachel Palmer Hooper</u>

4860-5386-0255.2