UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

| | |
|---|---|
| ADAM BROWN, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LEARFIELD COMMUNICATIONS, LLC, and SIDEARM SPORTS, LLC, <br><br> Defendants. | Case No.: 1:23-cv-00374-DAE <br><br> **Hon. David A. Ezra** |

### PLAINTIFF'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff respectfully submits this supplemental memorandum addressing two cases on which the Court requested further briefing at the oral hearing held on January 19, 2024.

### I. *Hearst TV* provides the roadmap for decision in this factually similar case.

On facts very similar to the case at bar, *Saunders v. Hearst TV, LLC*, 2024 U.S. Dist. LEXIS 5868 (D. Mass. Jan. 11, 2024) ("*Hearst*") supports findings, based on the plain meaning of the Video Privacy Protection Act's ("*VPPA*") text, in favor of Brown on each key issue in this case, namely, that the Complaint made legally sufficient allegations that: (1) Learfield is a video tape service provider ("VTSP"); (2) Brown's subscriber status makes him a "consumer"; and (3) Learfield is in the business of delivery of video content.[1]

***Video Tape Service Provider.*** In *Hearst*, the defendant, the owner of news apps that stream video, argued that the definition of VTSP in the VPPA should be read to limit VTSP's "distributors of prerecorded videocassettes or similar media available *at that time [1988]*." *Id.* at *6 (emphasis

---

[1] Learfield has not alleged a circuit-split regarding a defendant's classification of a VTSP, what level of knowledge must be pleaded by Plaintiffs, or that the Fifth Circuit has adopted any particular standard as it pertains to determining what information is sufficient for "personally identifiable information" pursuant to 2710(a)(3).

1

added). The *Hearst TV* court rejected this invitation to legislate from the bench by essentially adding narrowing language to the statute to "distributors" of physical media, noting how Congress added the phrase "or similar audio visual materials" to the VTSP definition in the VPPA in 2012 to keep up with the realities of *Internet video streaming*.[2] Like *Hearst TV*'s news apps, Learfield's website streams video.[3]

Here, Learfield also argued that "streaming services" do not qualify as VTSPs simply because the content is "publicly available" (Transcript, p. 35) and is posted on "a website that has other content as a part of [a] broader business strategy." Transcript, p. 15. While Plaintiff contests Learfield's framing of its business factually, as discussed below, the court in *Hearst* did not apply such a narrow reading of the term "delivery." Rather, the court cited S. Rep. 112-258, at 2 which acknowledged that "so-called 'on-demand' cable services and Internet streaming services allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones" and that the allegations that Hearst hosts and delivers thousands of videos was sufficient to find it to be a VTSP. *Hearst*, 2024 U.S. Dist. LEXIS 5868, *6.[4]

***Consumer.*** Moreover, the *Hearst* court's application of the "consumer" standard from *Yershov* is persuasive here. 2024 U.S. Dist. LEXIS 5868, at *7 (finding "a person is a 'subscriber' . . . if she provides some consideration to use the [service]") (citing *Yershov*, 820 F.3d at 487-88)).

---

[2] *Id.* (citing S. REP. 112-258, at 2) ("Today, so-called 'on-demand' cable services and Internet *streaming* services allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones.") (emphasis added).

[3] Quoting from footnote 18 (*Our Services: Turn-Key Websites*, SIDEARMSPORTS, *available at* https://sidearmsports.com/turnkey/ (last visited on April 2, 2023)) *and* 20 (*Our Services: SIDEARM Streaming*, SIDEARM SPORTS, *available at* https://sidearmsports.com/streaming/ (last visited on April 2, 2023)); *see also* Complaint, Dkt. No. 1, ¶¶ 17, 35, 37, 37 ns. 18–20, 42, 55 (touting Learfield's streaming of video content).

[4] District Courts in the 1st, 2nd, and 8th Circuits have found that ad-supported media websites to be VTSPs. *See Stoudemire v. Lee Enterprises*, No. 3:22-cv-00086, 2023 U.S. Dist. LEXIS 185787 (D. Iowa July 20, 2023), at *7 (finding that defendant advertising and local media company was a VTSP); *Czarnionka v. Epoch Times Ass'n*, 2022 U.S. Dist. LEXIS 209067, at *12 (S.D.N.Y. Nov. 17, 2022) (newspaper and media company engaged in the business of delivering prerecorded audio-visual materials); *Ambrose v. Boston Globe Media Partners LLC*, 2022 U.S. Dist. LEXIS 168403, at *6 (D. Mass. Sept. 19, 2022) (finding the Boston Globe to be a VTSP).

Applying *Yershov,* the court in *Hearst* found that providing an "email address to the . . . app and . . . enable[ing] geolocation services and push notifications" were "adequate consideration to use Hearst's apps to obtain subscriber status under the VPPA." *Hearst*, 2024 U.S. Dist. LEXIS 5868, at *7. This interpretation tracks the writing of the statute, as "Congress cast such a broadly inclusive net in the brick-and-mortar world, we see no reason to construe its words as casting a less inclusive net in the electronic world when the language does not compel that we do so." *Yershov*, 820 F.3d at 488.

**Delivery.** Importantly, the court in *Hearst* rejected the contorted construction of "delivery" preferred by Learfield,[5] where Hearst argued that "streaming services" do not qualify as VTSPs simply because the content is posted on "a website." *Hearst TV*, 2024 U.S. Dist. LEXIS 5868, at *6 (noting the VPPA was meant to apply to "on-demand [video] services" and "[i]nternet streaming services") (internal quotations omitted); Oral Argument Transcript (the "Transcript"), Doc. 56. The "generally available" nature of videos was as true in *Hearst* as it is here. 2024 U.S. Dist. LEXIS 5868, at *2, 4 (noting "plaintiffs concede that they chose to share" their personal information, implying the videos were publicly available).

Moreover, Learfield claims that it is not a VTSP because it does not "deliver" video. *See* Transcript, p. 34-35 (saying Learfield does not "deliver" videos to end users individually). Learfield, however, provides the presentation and delivery of video content production, including the streaming platform. ¶ 37, fn. 21. What is more, Plaintiff has alleged that Learfield purposefully and knowingly added video content to the Longhorns Website via videos embedded on web pages the Longhorns Website (*see generally* ¶¶ 54–55, 88 fn.60, 90 fn.61) and the videos are embedded, transmitted through, and played by media player coding added to web pages on the Longhorns

---

[5] Defined in 18 U.S.C. § 2710(a)(4) as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ."

3

Website by Learfield (*see* ¶¶ 58–60). It is not clear to Plaintiff what facts Learfield is relying on to claim it is not in the business of video services or does not deliver videos. Plaintiff notes that since the filing of Plaintiff's complaint, it appears that Learfield removed the embedded videos from the Texas Longhorns web site and, instead, now utilizes YouTube to host videos. Other than this change to their video servicing and delivery, as of the filing of Plaintiff's Complaint there is no question of Learfield's active role is delivering video content, including to newsletter subscribers.

As of when the complaint was filed, Learfield provided content to thousands of users on an *individualized* basis. (¶ 66). Plaintiff alleged that for each time an individual watched an individual video, Learfield transmitted each individual user's personal information and links it to each individual user's request for a specific video to Meta, Meta used that information to "build a valuable personal profile" to target individual users with "enhance[ed] marketing effectiveness," and the way websites, servers, and web browsers work support this explanation. *See* ¶ 66, fn. 40 (notes that the Pixel, placed on the Longhorn Website, collects individualized information of users, such as "IP address[], information about the [user's] web browser, page location, document, referrer and person using the website").

## II.     *Li v. Georges Media Group* is also instructive.

Next, Plaintiff will address the decision in *Li v. Georges Media Grp. LLC*, No. 23-1117, 2023 U.S. Dist. LEXIS 197601 (E.D. La. Nov. 2, 2023) (the "*Li* Decision"), attached hereto as **Exhibit A** and raised by Plaintiff at the oral argument. In *Li*, the Court addressed several of the arguments made by Defendants here in their Motion to Dismiss (see Dkt. No. 39).

In *Li*, plaintiffs' "consumer" status stemmed from "subscriptions to e-mail newsletters that individuals may sign up for on the . . . website." 2023 U.S. Dist. LEXIS 197601, at *2. The court found that because defendant had gained access to plaintiff's "personal data," plaintiff had

"sufficiently plead that she is a subscriber and thus a consumer under the VPPA" under both the "subscription factors" discussed by *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015) and the "consideration" test discussed in *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016). *Id.* at *9 ("provided consideration in the form of access to his personal information").

The *Li* court also examined the identical use of Facebook's Pixel as a tracking tool with similar factual allegations, and determined that defendant's use of the Pixel resulted in a knowing disclosure of PII. *Id.* at *10–11 (citing District Court decisions in the Second, Ninth, and Eleventh Circuits which found allegations of "knowing disclosure" to suffice, and that the FID disclosed by the Pixel is PII). The decision in *Li* thereby supports a finding by this Court that Plaintiff's sufficiently alleged Defendants' knowing disclosure of Plaintiff's PII in the form of the FID. Defendants chose to use, and then implement on every page that contains a video (*see* ¶¶ 72–73), Facebook's Pixel tracking tool.[6]

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.

**Dated: January 23, 2024**          **Respectfully submitted,**

| | |
|---|---|
| **LEVI & KORSINSKY, LLP** | **FOSTER YARBOROUGH PLLC** |
| Mark S. Reich (*pro hac vice*) | By: */s/ Patrick Yarborough* |
| Courtney E. Maccarone (PHV forthcoming) | Patrick Yarborough |
| Gary S. Ishimoto (*pro hac vice*) | Marshal J. Hoda (phv forthcoming) |
| 55 Broadway, 10th Floor | Jeffrey Lucas Ott |
| New York, NY 10006 | 917 Franklin Street, Suite 220 |
| Telephone: (212) 363-7500 | Houston, TX 77002 |
| Facsimile: (212) 363-7171 | Telephone: (713) 331-5254 |
| Email: mreich@zlk.com | Facsimile: (713) 513-5202 |
| Email: cmaccarone@zlk.com | Email: patrick@fosteryarborough.com |
| Email: gishimoto@zlk.com | Email: marshal@fosteryarborough.com |
| *Counsel for Plaintiff* | Email: luke@fosteryarborough.com |

---

[6] At the January 19 oral argument, this Court questioned Plaintiff's counsel about whether defendant in *Li* challenged its status as a VTSP in briefing. It did not.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed on January 23, 2024 with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

By: */s/ Patrick Yarborough*
Patrick Yarborough