IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ADAM BROWN, on Behalf of Himself and All Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>vs.<br><br>LEARFIELD COMMUNICATIONS, LLC, SIDEARM SPORTS, LLC, THE UNIVERSITY OF TEXAS AT AUSTIN, AND THE UNIVERSITY OF TEXAS AT AUSTIN ATHLETICS,<br><br>*Defendants*,<br><br>UNITED STATES OF AMERICA<br><br>*Intervenor*. | NO. 1:23-CV-00374-DAE |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Before the Court is a Motion to Dismiss Plaintiff Adam Brown's Amended Complaint filed by Learfield Communications, LLC ("Learfield Communications") and Sidearm Sports, LLC ("Sidearm") (collectively, "Learfield") on April 3, 2024. (Dkt. # 64.) Plaintiff filed a response on May 8, 2024. Learfield replied on May 24, 2024. (Dkt. # 66.) The Court finds this matter suitable for disposition without a hearing. Upon careful consideration of the

1

arguments asserted in the filings and the relevant law thereto, the Court **GRANTS** Defendants' Motion to Dismiss for the following reasons.

## BACKGROUND

I.   Procedural History

On July 26, 2023, this Court granted University of Texas at Austin's ("UT") Motion to Dismiss based on sovereign immunity. (Dkt. # 37.)   On January 29, 2024, this Court granted without prejudice Defendants' Motion to Dismiss claims under the Video Privacy Protection Act ("VPPA") (Dkt. # 60.)

To date, the Court is aware of two almost identical VPPA adjudications.  See Edwards v. Learfield Communications et al., No. 1:23-cv-65, 2023 WL 8544765 (N.D. Fla. Oct. 6, 2023); Peterson v. Learfield Communications LLC, et al., No. 8:23-cv-146, 2023 WL 9106244 (D. Neb. Dec. 8, 2023).  These cases involve Defendants' management of websites for the University of Florida and University of Nebraska-Lincoln.  In each case, the court held that plaintiffs failed to allege that they were consumers under the VPPA.

In the present action, Plaintiff reasserts his VPPA claim while also filing on a new claim for an alleged violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510 et seq. (the "Wiretap Act").

II.     Facts

Learfield Communications, LLC and Sidearm Sports, LLC operate websites for schools and universities including the Texas Longhorns Website ("Team Website" or "Longhorns Website"). (Dkt. # 61 at ¶¶ 1, 56.) Learfield invites visitors on the Team Website to subscribe to emailed newsletters. (Id. at ¶ 3). The visitors allegedly provide their personally identifiable information ("PII") in exchange for email newsletters, which highlight content from the Team Website and redirect subscribers to the Team Website's videos and articles. (Id. at ¶ 3).

Learfield added Facebook's "Pixel" software on the Longhorns Website. (Id. at ¶ 9). The Pixel enables Facebook to track its users' activity on other websites. (Id. at ¶ 75.) When a user logs into Facebook, Facebook generates a "c_user" cookie and stores it on the user's device. (Id. at ¶ 103.) That cookie "contains a user's nonencrypted Facebook User ID number ('UID')." (Id.) Then, if that user interacts with the Longhorns Website, the site sends Facebook metadata that "may" include a video title and a c_user cookie if one is in place on the user's device. (Id. at ¶ 198.) If someone can access the metadata and find the c_user ID, he can append the c_user ID to a URL (www.facebook.com/[UID here]) to reach the corresponding Facebook profile. (Id. at ¶ 199.)

3

Brown is one of many subscribers to a Texas Longhorns newsletter operated by Learfield (the "Longhorns Website")[1] that provides users with access to videos, clips, and other content related to the university's athletics.  (Id. at ¶ 15.) Brown alleges that the Longhorns Website does not disclose that subscribers' personal identifying information ("PII") will be captured by the site's Facebook Pixel and then transferred to Facebook, purportedly exposing the subscribers' PII to "any person of ordinary technical skill who received that data."  (Id. at ¶ 4.) Brown contends that co-defendants Sidearm Sports, LLC and Learfield Communications, LLC purposefully implanted the Pixel in order to gather marketing data, and that such acts constitute a violation of the Video Privacy Protection Act ("VPPA").  (Id. at ¶ 9.)  Brown alleges Learfield chose not to seek requisite consent or any form of consent from the user.  (Id. at ¶ 10.)  Brown also alleges that Learfield violated the Federal Wiretap Act because it chose to employ tools which allow third parties to intercept subscribers' search terms, including those queries leading to video content on the Longhorns Website. (Id. at ¶ 11.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all

---

[1] The website is located at https://texassports.com/.

well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

## DISCUSSION

I. VPPA Claim

Rather than address the Court's prior order holding that Plaintiff is not a consumer under the VPPA, Plaintiff argues the Court should reconsider its reliance on Carter v. Scripps Networks, LLC, No. 22-cv-2031 (PKC), 2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023).

5

In its prior order, this Court determined that Plaintiff is not a *consumer of audio-visual materials*. Therefore, Plaintiff could not plausibly allege a VPPA claim. The Court will not change its prior holding.

This Court explained that "based on Carter, courts have dismissed VPPA claims when the plaintiff has subscribed to a newsletter," because the videos are accessible outside of and not exclusive to the newsletter. (Dkt. # 60 at 21.) Indeed, "Plaintiffs do not allege that the videos are in the newsletter," but rather allege that "the newsletter links to videos on the website which the public can access without signing up for the newsletter." See Salazar v. National Basketball Ass'n, ." No. 1:22-cv-07935, 2023 WL 5016968, at *8–10 (S.D.N.Y. Aug. 7, 2023) ("Because Plaintiff does not allege that his newsletter subscription allowed him access to the videos on the NBA.com site that any member of the public would not otherwise have, Plaintiff has alleged that he was a "subscriber[ ] to newsletters, not [a] subscriber[] to audio visual materials.")

In a nearly identical case, the Nebraska District Court rightfully noted the allegations demonstrate how a newsletter does not fit within the statute of the VPPA:

> This case illustrates the uncomfortable fit of the VPPA to free video streaming services. If Plaintiff accessed free videos on the Team Website by simply typing 'huskers.com' into his web browser, he would undoubtedly not be a 'renter, purchaser, or subscriber of goods or services,' meaning he and members of his class would have no VPPA claim for having his PII allegedly disclosed to Facebook.

6

> However, because Plaintiff 'subscribes' (in a modern sense unforeseen by the statute) to a free newsletter that contains links to these free videos, which anyone can freely access on the Team Website without first subscribing to the newsletter, Plaintiff argues that he and all other newsletter subscribers are entitled to relief under the VPPA, including not less than $2,500 in liquidated damages to each class member and injunctive relief.  That argument fails not only as a matter of statutory interpretation but also as a matter of common sense.

Peterson, 2023 WL 9106244 at *19.  The current action presents the same uncomfortable fit that the Nebraska District Court described.  Plaintiff's additional allegations do not change the Court's opinion that he failed to subscribe to audio-visual content.  For this reason, the Court stands by its original holding that Plaintiff is not a consumer under the statute.

Lastly, the Court stands by its decision that the Ellis Factors are an independent and adequate ground to resolve this case.  See Ellis v. Cartoon Network, Inc., 803 F.3d 1251 (11th Cir. 2015) (in determining whether a plaintiff is a subscriber, the court considers factors such as "payment, registration, commitment, delivery, expressed association, and[] access to restricted content"); Edwards v. Learfield Commc'ns, LLC, No. 1:23-CV-65-AW-MAF, 2023 WL 8544765, at *6 (N.D. Fla. Oct. 6, 2023) ("Plaintiffs' signing up for email updates here did not make them 'subscribers.'  Signing up requires no 'durable' commitment or real exchange at all…").

II.     Wiretap Claim

In his Amended Complaint, Plaintiff adds a claim under the Electronic Communications Privacy Act ("ECPA"), which amended the Federal Wiretap Act "by extending to data and electronic transmissions the same protection already afforded to oral and wire communications." In re Pharmatrak, Inc. Privacy Litig., 329 F.3d 9, 18 (1st Cir. 2003). The statute provides a civil remedy for those whose communications are unlawfully intercepted. 18 U.S.C. § 2520.

"A plaintiff pleads a prima facie case under [EPCA] by showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device. In re Google Inc. Cookie Placement Consumer Priv. Litig., 806 F.3d 125, 135 (3d Cir. 2015) (quoting In re Pharmatrak, Inc. Privacy Litig., 329 F.3d 9, 18 (1st Cir. 2003)). It is also a violation of the ECPA to use the contents of a communication that a person knows was unlawfully intercepted. 18 U.S.C. § 2511(1)(d); see also Bartnicki v. Vopper, 532 U.S. 514, 529 (2001) (discussing the "use" provision of § 2511(1)(d) as distinct from the act of intercepting under § 2511(1)(a)).

A. The Wiretap Act is a One-Party Consent Statute

Plaintiff alleges that Learfield procured Meta's product and services, including the Pixel, to intercept subscribers' communications and personal

identifiable information, and sent it to Meta for the purpose of improving targeted advertising and visitor metrics across websites, including the Longhorns Website. (Dkt. 61 at ¶¶ 93, 97, 164–70.)

"Intercept" is defined under the Wiretap Act as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). The ECPA provides an exception to liability when the person intercepting a communication is also a "party to the communication." 18 U.S.C. § 2511(2)(d). This is referred to as the "party exception."

Pixel is alleged to have taken Plaintiff's data during the passing of digital information between Plaintiff and Learfield while Plaintiff was using Learfield's Website. See Dkt. # 61 at 30 ("While communicating on the Longhorns Website, users had the contents of their *communications with Defendants* intercepted by Meta via the Pixel."); In re Google Inc. Cookie Placement Consumer Priv. Litig., 806 F.3d 125, 143 (3d Cir. 2015) ("[T]he intended recipient of a communication is necessarily one of its parties").

According to Learfield, a party to a communication cannot unlawfully "intercept" a communication directed to it and cannot be held liable for "eavesdropping" upon itself. As an analogy, it is impossible for Cowboys Wide Receiver CeeDee Lamb to intercept a ball thrown by his own quarterback i.e. Dak

9

Prescott. Someone else on the defense (for instance, Eagles Cornerback James Bradberry) would have to intercept the pass. In re Nickelodeon Consumer Priv. Litig., 827 F.3d 262, 275 (3d Cir. 2016) (dismissing Wiretap Act claim because defendant was a party to the communications); In re Google Cookie Placement Consumer Priv. Litig., 806 F.3d 125, 142-43 (3d Cir. 2015) (dismissing Wiretap Act claim because tracking cookies placed by advertising providers made the advertiser the intended recipient of the electronic transmission).

As Plaintiff alleges, Learfield owns and operates the website at issue. Learfield has allegedly placed "tracking tools" on the website. (Dkt. # 61 at ¶¶ 74-86.) Therefore, Plaintiff's communications with the website were communications with Learfield. Under the Wiretap Act, Learfield was a party to whatever data was allegedly "intercepted." See Katz-Lacabe v. Oracle Am., Inc., 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) ("[a]s Defendant's customers must have chosen to deploy Oracle's tools on their websites, it necessarily follows that "one of the parties to the communication"—the websites themselves—gave "prior consent to such interception.").

Plaintiff suggests the Court should apply the Wiretap Act for equitable reasons. A similar argument was made in In re Google Inc. Cookie Placement Consumer Priv. Litig., 806 F.3d 125, 140 (3d Cir. 2015). In that case, plaintiffs were allegedly induced through deceit by defendants to send browser requests to

10

Google.  The court held that although "we are no doubt troubled by the various deceits alleged in the complaint, we do not agree that a deceit upon the sender affects the presumptive non-liability of parties under § 2511(2)(d)."  806 F.3d 125, 143.  Indeed, the court concluded "it was by design that there is no statutory language by which the defendants' various alleged deceits would vitiate their claims to be parties to the relevant communications. The Wiretap Act is a wiretapping statute, and just because a scenario sounds in fraud or deceit does not mean it sounds in wiretapping."  Id.

For the most part, Plaintiff concedes that Learfield is a party to the communications.  However, Plaintiff argues that such a fact is irrelevant because Defendants coordinated with third parties to intercept Plaintiff's PII for "*the purpose of a tortious or criminal act . . . .*" 18 U.S.C. § 2511(2)(d).

The crime-tort exception-to-the-exception applies if a party intercepts a communication "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."  18 U.S.C. § 2511(2)(d).  Several circuits have determined that, to plead the crime-tort exception, the allegedly unlawful act must be independent of the allegedly unlawful interception.  See, e.g., Caro v. Weintraub, 618 F.3d 94, 100 (2d Cir. 2010); Sussman v. American Broadcasting Cos., 186 F.3d 1200, 1201–03 (9th Cir. 1999).  Other courts find that the crime-tort exception applies only where either the

"primary motivation" or "determinative factor" in a party's interception was to commit a crime or tort. See United States v. Dale, 991 F.2d 819, 842 (D.C. Cir. 1993); In re Meta Pixel Healthcare Litig., 647 F. Supp. 3d 778 (N.D. Cal. 2022); In re DoubleClick Inc. Priv. Litig., 154 F. Supp. 2d 497, 514–15 (S.D.N.Y. 2001); cf Caro v. Weintraub, 618 F.3d 94 (2d Cir. 2010) (eschewing a hierarchy of intent and observing merely that "if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists...").

This Court agrees with an overwhelming majority of courts holding that the crime-tort exception does not apply to the alleged interception itself; instead, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." In re Google Cookie Placement, 806 F.3d at 145 (emphasis in original) (citation omitted). In this case, Plaintiff's claim is not tethered to another independent tortious or criminal act.

Even Plaintiff's own caselaw supports this understanding of the Wiretap Act. In Mekhail v. N. Mem'l Health Care, the complaint referenced a violation of the Health Insurance Portability and Accountability Act, commonly known as HIPAA, to invoke the crime-tort exception. No. 23CV00440KMMTNL, 2024 WL 1332260, at *5 (D. Minn. Mar. 28, 2024). Moreover, in Kurowski v.

<u>Rush Sys. for Health</u>, the plaintiff also invoked HIPAA to state a claim under the crime-tort exception. No. 22 C 5380, 2023 WL 8544084, at *2 (N.D. Ill. Dec. 11, 2023). In this case, the Court has already dismissed the VPPA claims. Therefore, there is no underlying criminal or tortious act to meet the exception.

Moreover, Plaintiff has failed to plausibly allege intent, which many courts have found to be a necessary component under the crime-tort exception. The Wiretap Act clearly states that such communication must be "intercepted *for the purpose* of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). As the Second Circuit explained:

> A simultaneous tort arising from the act of recording itself is insufficient. Congress chose the word "purpose" for a reason. Therefore, the offender must have as her objective a tortious or criminal result. Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act. But Congress limited the cause of action to instances where one party to the conversation deliberately seeks to harm the other participant through the information intercepted.

<u>Caro v. Weintraub</u>, 618 F.3d 94, 100 (2d Cir. 2010) (emphasis added). Plaintiff has not alleged that Learfield deliberately sought to harm Plaintiff by using marketing tools. Therefore, because Plaintiff has failed to allege an underlying crime or tort as well as an intent to commit a crime or tort, the Wiretap Act claim is dismissed.

CONCLUSION

13

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss with prejudice. The claims will be dismissed with prejudice, as the defects identified by the Court are uncurable. Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

**IT IS SO ORDERED**.

DATED: Austin, Texas, June 27, 2024.

_____
David Alan Ezra
Senior U.S. District Judge